Fifth Division

May 6, 2005

1-02-3744)

1-03-1156) Cons.

KATHERINE A. ELLIS, Special Administrator
 ) 306(a)(2) Appeal from the

of the Estate of Imelda Patrocinio-Shoda, 
 ) Circuit Court of 

deceased, et al., 
 ) Cook County.

)

Plaintiffs- Appellees,
 ) 

) Consolidated Case Nos.

vs.
 ) 02 L 4552, 02 L 4559,

) 02 L 4562, 02 L 4565,

) 02 L 4566, 02 L 4567,

AAR PARTS TRADING INC., f/k/a AAR Aircraft &
 ) 02 L 4568, 02 L 4569,

Engine Group, Inc., and FLEET BUSINESS
 ) 02 L 4570, 02 L 4571,

CREDIT, LLC, f/k/a Fleet Business Credit 
 ) 02 L 4572, 02 L 4573,

Corporation, f/k/a Sanwa Business Credit Corporation,
 ) 02 L 4574, 02 L 4575,

) 02 L 4576, 02 L 4577,

Defendants-Petitioners.
 ) 02 L 4578, 02 L 4579,

) 02 L 4580, 02 L 4581,

) 02 L 4582, 02 L 4747,

 ) 02 L 4758, 02 L 4761

)

) Honorable

) Kathy M. Flanagan,

) Judge Presiding.

_____________________________________________________________________________

JOVY LAYUG, as Special Administrator of the 
 ) 306(a)(2) Appeal from the

Estate of JOSEFINA T. LAYUG, deceased, 
 ) Circuit Court of 

) Cook County.

Plaintiff- Appellee,
 )

) 

and
 ) No. 00 L 9599

) 

PATRICIA F. PIÑOL, as Special Administrator of ) 

the Estate of JOSEPHINE A PIÑOL
, deceased, ) 

et. al., ) 

) 

Plaintiffs-Appellees, ) 

) 

vs. ) 

) 

AAR PARTS TRADING INC., f/k/a AAR Aircraft & ) 

Engine Group, Inc., and FLEET BUSINESS ) 

CREDIT, LLC, f/k/a Fleet Business Credit ) 
 

Corporation, f/k/a Sanwa Business Credit Corporation, )

) Honorable

) Kathy M. Flanagan,

Defendants-Appellants. ) Judge Presiding.

OPINION MODIFIED UPON DENIAL OF REHEARING

JUSTICE NEVILLE delivered the modified opinion of the court:

These consolidated appeals 
arise out of two lawsuits filed in the trial court on behalf of 113 plaintiffs who were Philippine decedents who died as a result of a plane crash on April 19, 2000, in the Philippines.  The defendants, AAR Parts Trading, Inc
. (hereinafter AAR), a parts company, and Fleet Business Credit, LLC
 (hereinafter Fleet), a financing company
,
 filed motions to dismiss predicated on the doctrine of 
forum non conveniens 
in order to dismiss the plaintiffs' consolidated cases in Cook County, Illinois, so that the cases could be litigated in the Philippines. 
 In this appeal, we are called upon to review two trial court orders: (1) 
the trial court's November 20, 2002, order denying the defendants' motion to dismiss the "02L" 
Katherine A. Ellis (hereinafter Ellis)
 cases
; and (2) the trial court's April 8, 2003, order denying AAR's renewed motion to dismiss Jovy Layug  (hereinafter 
Layug
) 
and Fleet's initial motion to dismiss 
Layug
. 
The defendants' interlocutory appeals were filed 
on December 21, 2002 (the Ellis appeal) and on April 8, 2003 (the Layug appeal), pursuant to Illinois Supreme Court Rule 306(a)(2) (134 Ill. 2d R. 306(a)(2)), and were consolidated on June 5, 2003, by the appellate court.

BACKGROUND

 In 1978
, the Boeing Company, located in Seattle, Washington, manufactured a Boeing 737 jet.  In 1998, the Boeing 737 was purchased by AAR, an Illinois corporation with its principal place of business in Illinois
.  AAR leased the Boeing 737 
to the Air Philippines Corporation. Later, AAR sold the Boeing 737 and assigned its rights, title and interests to Fleet, a Delaware corporation with its principal place of business in Illinois. 

On April 19, 2000, the Boeing 737 jet, Air Philippines Flight 541,
 crashed into a 577-foot-high hill, located in Samal Island, while on a domestic flight from Manila to Davao City in the Republic of the Philippines. At the time of the crash, Air Philippines Flight 541 was in the process of making a second attempt to land on the runway.  Everyone on the flight, including seven crew members and 124 passengers, died in the crash.  

THE COMPLAINTS

On August 2, 2000, 
Layug 
filed a complaint as an individual plaintiff
, against AAR. 
Layug 
is a resident of Cook County, but the decedent, her mother, was a resident of the Philippines. In the initial, one-count, 
products liability complaint, 
among other allegations, 
Layug
 alleged that the Boeing 737: (1) lacked proper and current manuals for operation, maintenance and/or repair; (2) was beyond its safe operational life expectancy; (3) was comprised of structures that were fatigued, cracked, corroded and otherwise in a condition that would likely lead to failure of the aircraft; and (4) contained a flap control system that was fatigued and likely to fail.  
Layug
 alleged that as a direct and proximate cause of these defective, unreasonably dangerous and unfit conditions, the aircraft crashed and caused the decedent to be fatally injured.

On September 19, 2000, 
Layug
 filed her first amended complaint, which contained three counts. In addition to the products liability count in her initial complaint, the plaintiff added count II based upon negligence, and count III for breach of warranty. On November 22, 2000, AAR filed its answer to 
Layug's
 first amended complaint, and on January 19, 2001, AAR filed a 
motion to dismiss based upon the doctrine of 
forum non conveniens
 pursuant to Supreme Court Rule 187.  134 Ill. 2d R. 187.  However, before the trial court could rule on AAR's motion to dismiss the first amended complaint, 
Layug
 filed a second amended complaint on February 13, 2001, adding an allegation in the complaint that she had been appointed the administrator of the decedent's estate.  

On August 17, 2001, the trial court denied AAR's motion to dismiss. The court ruled "that the moving defendant, [had] not met its burden as to the relevant factors for consideration" and that the private and public interest factors, "when viewed in their 
totality
, did not 
strongly
 favor the suggested forum."  AAR then filed a motion to reconsider and to clarify the court's order, which was also denied on October 25, 2001.  The court ruled that AAR had failed to provide the court with changes in existing law or with any newly discovered evidence that was unavailable when the court ruled on the original motion to dismiss. AAR did not file an appeal from the trial court's October 25, 2001, order denying its motion to reconsider the motion to dismiss the 
Layug
 case.

On March 14, 2002, 
Layug
 filed a third amended complaint with new matters, including eight new counts:  negligent entrustment,
 count I (wrongful death) and count II (survival action); strict products liability,
 count III (wrongful death) and count IV (survival action); Illinois common law of bailment
, count V (wrongful death) and count VI (survival action); negligence, count VII (wrongful death) and count VIII (survival action); breach of warranty, count IX (wrongful death) and count X (survival action); and spoliation of evidence, count XI (damages).
  
Fleet Business Credit, LLC, was also joined as an additional defendant. 

One month later, on April 16, 2002, 
Layug
 filed a fourth amended complaint joining 32 new plaintiffs representing 53 decedents
 (hereinafter referred to as the 
Pinol
 plaintiffs
 and the complaints involving 
Layug
 and the 32 
Pinol
 plaintiffs will be referred to as the 
Layug/Pinol 
plaintiffs' cases).  The fourth amended complaint contained the same counts as those contained in the third amended complaint. On June 25, 2002, both AAR and Fleet filed answers to the 
Layug/Pinol
 plaintiffs' fourth amended complaint. Neither defendant filed a motion to dismiss the 
Layug/Pinol
 plaintiffs' complaint based upon the doctrine of
 forum non conveniens
 within the 90-day period prescribed by Rule 187.  134 Ill. 2d R. 187.
  However, before the 90-day period expired, on August 15, 2002, the 
Layug/Pinol
 plaintiffs filed their fifth amended complaint adding additional allegations to counts III and IV  – strict products liability
; count V – Illinois common law of bailment; and count XI - for spoliation of evidence.

THE AAR AND FLEET APPEAL OF THE ELLIS PLAINTIFFS' CASES

On May 10, 2002, the defendants filed a joint motion to consolidate; the motion referred to 24 complaints with different case numbers, filed on behalf of 59 additional decedents who are the "02L" 
Ellis
 plaintiffs;
(footnote: 1) 
and the motion sought to consolidate the "02L" 
Ellis 
cases with the 
Layug
/
Pinol
 cases.  The motion to consolidate was granted on May 16, 2002, "for discovery purposes only."
The "02L" 
Ellis
 cases were never consolidated with the 
Layug/Pinol
 cases for trial. 
On August 10, 2002, the "02L" 
Ellis
 plaintiffs filed their first amended complaint. 
On August 27, 2002, AAR and Fleet filed a j
oint motion to dismiss the
 "02L" 
Ellis
 plaintiffs' complaint on the grounds of  
forum non conveniens
.  The trial court denied the motion to dismiss on November 20, 2002, for the same reasons that AAR's motion to dismiss 
Layug's 
first amended complaint was denied in August 2001.  On December 20, 2002, the defendants filed a joint petition for interlocutory appeal, pursuant to Supreme Court Rule 306 (a)(2) (166 Ill. 2d R. 306(a)(2)),
 from the November 20, 2002, order 
which was granted by the appellate court. 

THE AAR AND FLEET APPEAL OF 
LAYUG
'S CASE

On November 26, 2002, AAR and Fleet filed a
 joint motion to dismiss 
Layug
, the individual plaintiff's case, but not the 32 
Pinol 
plaintiffs' cases, based upon the doctrine of 
forum non conveniens
. 
(footnote: 2)  The motion was entitled "Defendant, Fleet Business Credit LLC's 
Initial
 Motion to Dismiss the Claims of Jovy Layug Set Forth in the fifth amended complaint Based Upon 
Forum Non Conveniens
" (emphasis added) and "Defendant, AAR Parts Trading, Inc.'s 
Renewed
 Motion to Dismiss the Claims of Jovy Layug Set Forth in the fifth amended complaint Based Upon 
Forum Non Conveniens
" (emphasis added). 
  
In response to the defendants' joint motion to dismiss, 
Layug
 filed a motion to strike and objections to the defendants' joint motion to dismiss on December 6, 2002
.  
Layug
 asserted that the "defendants' motions *** [were] untimely and in violation of Supreme Court Rule 187 which requires that 
forum non conveniens 
motions must be filed 'not later than 90 days after the last day allowed for the filing of that party's answer'."  In reply, the defendants argued that 
Layug
's motion to strike was untimely; that her interpretation of Rule 187 was erroneous; and that after the fifth amended complaint was filed, they had a 
de novo
 time period for filing a new 
forum non conveniens
 motion.  Before the trial court ruled on the defendants' motion to dismiss, 
the 
Layug/Pinol
 plaintiffs, on March 18, 2003, filed a motion for leave to file an amendment to count I (negligent entrustment) and count X (breach of warranty) of the fifth amended complaint, which was granted.

On April 8, 2003, the trial court held a hearing on the defendants' 
joint motions to dismiss
.
 The court found that Fleet's motion to dismiss was untimely because 
Fleet filed its motion to dismiss 
Layug
's case 154 days after filing an answer to the fourth amended complaint which joined Fleet as a defendant in the lawsuit. T
he court found that AAR's motion to dismiss was also untimely because its  " 'renewed' motion *** was filed one year and two days after this court denied the first 
forum non conveniens
 motion." The trial court stated that for "purposes of completeness of the record on appeal,"
 however, it would rule on the defendants' motions to dismiss.  The court found that the motions failed to delineate new facts, information, discovery, or data which in any way altered the court's prior findings and rulings.  Therefore, the court denied the "initial" motion of defendant Fleet and the "renewed" motion of defendant AAR to dismiss 
Layug
's case on the grounds of 
forum non conveniens
. 
Consequently, on April 21, 2003, the defendants filed a second joint interlocutory appeal.

This appeal presents one issue for our review: whether 
the trial court erred and abused its discretion: (a) when it entered the November 20, 2002, order denying the defendants' motion to dismiss the "02L" 
Ellis
 cases on the grounds of 
forum non conveniens
; and (b) when it entered the April 8, 2003, order denying AAR's renewed motion to dismiss 
Layug
 and Fleet's initial motion to dismiss 
Layug
 on the grounds of 
forum non conveniens
.  Additionally, the 
Pinol
 plaintiffs have filed a motion to dismiss the defendants' appeal as to the 
Pinol
 plaintiffs for lack of jurisdiction, which has been taken with this case. 

ANALYSIS

JURISDICTION

The threshold question we must address in this appeal is the question of jurisdiction. While the parties agree that this court has jurisdiction over the 
Ellis
 plaintiffs' cases, the 33 
Pinol
 plaintiffs and 
Layug
 question whether this court has jurisdiction over their cases.  The appellate court must always address the jurisdiction question, even when the parties agree, before it addresses the other issues raised on appeal, because it has "an independent duty to consider [its] jurisdiction before considering the merits of any case."  
Gibson v. Belvidere National Bank & Trust Co.
, 326 Ill. App. 3d 45, 47-48 (2001), citing 
Almgren v. Rush-Presbyterian-St. Luke's Medical Center
, 162 Ill. 2d 205, 210 (1994).  Therefore, we will decide if the appellate court can exercise jurisdiction over the 
Ellis
 plaintiffs, as well as the 
Pinol
 and 
Layug
 plaintiffs.
 

The "02L" 
Ellis
 Plaintiffs

On August 10, 2002, the "02L" 
Ellis
 plaintiffs filed their first amended complaint.  
AAR and Fleet filed a j
oint motion to dismiss the
 "02L" 
Ellis
 cases on the grounds of 
forum non conveniens 
on August 27, 2002
, which was denied on November 20, 2002.
  As such, AAR's and Fleet's 
forum non conveniens 
motion to dismiss was timely because it was filed within 90 days after the last day allowed for the defendants to file their answer. See 134 Ill. 2d R. 187(a). 
On December 20, 2002, the defendants filed a joint petition for interlocutory appeal from the November 20, 2002, order, pursuant to Supreme Court Rule 306(a)(2) (166 Ill. 2d R. 306(a)(2)), 
which was granted by the appellate court.  Therefore, we find that we have jurisdiction over the 
Ellis
 plaintiffs because
 the defendants' petition for leave to appeal was filed within 30 days of the trial court's order denying their motion to dismiss the 
Ellis
 plaintiffs' first amended complaint.  See 166 Ill. 2d R. 306(b). ("[T]he petition***shall be filed in the Appellate Court***within 30 days after the entry of the order").

The 
Pinol 
Plaintiffs' Cases

The 
Pinol
 plaintiffs have filed a motion to dismiss the defendants' appeal against them contending that this court lacks jurisdiction. They assert that the defendants never filed a motion to dismiss against them
 on the grounds of 
forum non conveniens
 and that the time for doing so has long expired.  Therefore, they contend 
that since a motion to dismiss the 
Pinol
 plaintiffs' cases was never filed in the court below, we do not have jurisdiction over them for purposes of this appeal.  We agree with the 
Pinol
 plaintiffs' position that this court lacks jurisdiction over them.  Once again, in order to vest the appellate court with jurisdiction over the 
Pinol
 plaintiffs, Supreme Court Rule 306(c) requires that an interlocutory petition for leave to appeal must be filed in this court.  See 134 Ill. 2d R. 306(c).

 The 
Pinol
 plaintiffs were joined in the fourth amended complaint on April 16, 2002, and both defendants answered the fourth amended complaint on June 25, 2002. According to Supreme Court Rule 187(a), the defendants had until September 23, 2002, to file a 
forum non conveniens 
motion. 134 Ill. 2d R. 187(a).  A review of the record reveals that the defendants never filed a motion to dismiss predicated on the grounds of 
forum non conveniens
 against the 
Pinol
 plaintiffs in the trial court. 
 Even after the 
Layug/Pinol
 plaintiffs filed a fifth amended complaint on August 15, 2002, the defendants failed to file a motion to dismiss the 
Pinol
 plaintiffs.
  
We note that the Layug/Pinol case was consolidated, 
for discovery purposes only
, on May 16, 2002, with the Ellis cases.  When the Layug/Pinol and Ellis cases were consolidated, 
they retained separate case numbers and remained separate cases for all motions and other matters except discovery matters
.  See 
Nationwide Mutual Insurance Co. v. Filos
, 285 Ill. App. 3d 528, 532 (1996) (the consolidation was done only for convenience and economy;  the consolidation did not merge the causes into a single suit, or change the rights of the parties, or make those who were parties in one suit parties to another); 
Colletti v. Crudele
, 169 Ill. App. 3d 1068, 1076 (1988); appeal denied by 122 Ill. 2d 571 (1988) (the trial court's consolidation order consolidating the cases for discovery purposes only did not deprive the cases of their separate identities)
, superceded on statutory grounds in 
In re Marriage of Sandra L
, 321 Ill App. 3d 360 (2001) (amended 735 ILCS 5/2-301 (West Supp. 1999));  
Kassnel v. Village of Rosemont
, 135 Ill. App. 3d 361, 364 (1985) (the trial court consolidated the two suits for a hearing on certain common issues, but separate case numbers were retained and separate judgments were entered in each case; therefore, the consolidation of the actions was only to permit a single hearing of evidence relating to common issues and did not result in the merging of the two matters into a single suit). Therefore, since the Layug/Pinol case and Ellis cases were separate cases for all matters except discovery, a forum non conveniens motion would have to be filed in the Layug/Pinol case against the Pinol plaintiffs in order for the trial court to enter an order binding on the Pinol plaintiffs. The defendants' decision to file a forum non conveniens motion against Layug, individually, and the defendants' failure to file a forum non conveniens motion in the Layug/Pinol case against all named parties, prevented the trial court from  entering an order against the Pinol plaintiffs and resulted in no order being entered in the trial court which conferred jurisdiction on the Appellate Court over the Pinol plaintiffs.  Finally, the Pinol plaintiffs are not bound by orders entered in the Ellis case.  See 
Filos
, 285 Ill. App. 3d at 532; 
Colletti
, 169 Ill. App. 3d at 1076
; 
Kassnel
, 135 Ill. App. 3d at 364.

We also note that AAR and Fleet did not file, as required by Rule 306,  a petition in the appellate court within 30 days after the trial court entered an order because the trial court never entered an order allowing or denying a motion to dismiss the 
Pinol 
plaintiffs' cases on the grounds of 
forum non conveniens
.  Therefore, since a Rule 306 petition was never filed in this court by AAR or Fleet naming the Pinol plaintiffs, this court has no jurisdiction over the 
Pinol
 plaintiffs.  See 134 Ill. 2d R. 306(c).
  See also 
Miller v. Consolidated Rails Corp
, 173 Ill. 2d 252, 258 (1996) (The 30-day time limit for filing the petition for leave to appeal from the denial of a 
forum non conveniens 
 motion is jurisdictional).

The 
Layug
 Plaintiff

A.  AAR's First Motion To Dismiss The 
Layug's
 First Amended Complaint

Finally, we must decide if we have jurisdiction over the 
Layug 
plaintiff's case. We note that there were two 
forum non conveniens
 motions to dismiss filed against 
Layug
 in the court below.  The first motion to dismiss was filed by AAR in 2001, against 
Layug
's first amended complaint.  The trial court denied that motion to dismiss on August 17, 2001.  
Layug
 asserts that 
this court lacks jurisdiction over her because
 AAR should have filed a petition in this court from the trial court's August 17, 2001, order denying AAR's motion to dismiss, but did not do so.  Instead, AAR filed a motion to reconsider, which was also denied on October 25, 2001. We agree with 
Layug
. 

P
ursuant to Supreme Court Rule 306(c), AAR had 30 days
 
to file a petition for leave to appeal in the appellate court from the trial court's August 17, 2001, order.  166 Ill. 2d R. 306(b); see also 
In re Leonard R
., 351 Ill. App. 3d 172, 174 (2004) (Illinois 
courts have held that a motion for reconsideration directed against an interlocutory order will not 
toll the running of the 30-day deadline for the filing of the appeal under Rule 306).
  
Therefore, since AAR did not file an interlocutory appeal 30 days after the trial court entered the August 17, 2001, order denying AAR's first motion to dismiss 
Layug's
 first amended complaint, the limitation period has expired and AAR cannot do so now. See 166 Ill. 2d R. 306(b).

B.  AAR's and Fleet's Second Motion to Dismiss Only 
Layug's
 Fourth Amended Complaint

After AAR and Fleet filed an answer to the 
Layug/Pinol 
plaintiffs' fourth amended complaint and, after the
 Layug/Pinol 
plaintiffs' filed their fifth amended complaint, AAR and Fleet filed a joint motion and memorandum to dismiss on the grounds of 
forum non conveniens
 on November 26, 2002.  The joint motion to dismiss was entitled "
AAR's
 
Renewed Motion To Dismiss and Fleet's 
Initial
 Motion to Dismiss
" 
Layug
's fifth amended complaint.  The motion and memorandum to dismiss the fifth amended complaint was denied 
by the trial court on April 8, 2003.  Within 30 days after the trial court entered its order, the defendants filed 
a joint petition in the appellate court for leave to file an interlocutory appeal on April 21, 2003
.  
Layug
 argues on appeal that we lack jurisdiction over the April 21, 2003, petition.  First, 
Layug
 argues that both defendants' motions to dismiss her fifth amended complaint were untimely. AAR's "renewed" motion to dismiss was untimely because, 
instead of "realizing the jurisdictional time to seek leave to appeal from [the trial court's August 17, 2001] order had long run," AAR filed a "renewed" motion to dismiss the claim of 
Layug
 on November 26, 2002, "over one year after AAR's motion to dismiss the 
Layug
 case was denied."  She also asserts that 
Fleet's "initial" motion to dismiss the fifth amended complaint was also untimely because it was filed 154 days after it answered plaintiff's fourth amended complaint.  Therefore, since the defendants' joint motion to dismiss was untimely filed, we lack jurisdiction over the defendants' petition filed April 21, 2003.

We disagree with 
Layug
's argument regarding the defendants' joint motion to dismiss 
Layug's
 fifth amended complaint.  First, we find that
 Supreme Court Rule 187 is not jurisdictional and, therefore, cannot divest this court of jurisdiction over this appeal. 134 Ill. 2d R. 187(a).  Second, whether we may properly exercise jurisdiction over the
 Layug
 case is governed by Rule 306(b), which provides that the appellate court has jurisdiction over appeals from trial court orders allowing or denying motions to dismiss on grounds of 
forum non conveniens 
if a petition is filed in this court within 30 days of 
the trial court's order.  See 166 Ill. 2d R. 306(b).

Supreme Court Rule 187

In order to answer the jurisdiction question as it relates to 
Layug
,
 we find it necessary to discuss an underlying issue in this case, whether successive 
forum non conveniens
 motions are permitted by Supreme Court Rule 187.  T
he trial court determined in its April 21, 2003, order that pursuant to Supreme Court Rule 187, the defendants' joint motion to dismiss the fifth amended complaint filed November 26, 2002, was untimely. The trial court stated that "the only  logical interpretation" of Rule 187 is that it "applies to the 
original
 answer of any given defendant to the 
original
 pleading filed against that defendant."  According to the trial court, AAR's only opportunity to file a 
forum non conveniens
 motion against 
Layug
 would have been within 90 days after its November 22, 2000, 
original 
answer to 
Layug's
 first amended complaint
.  Therefore, since AAR neglected to file an appeal from the trial court's ruling on its 
original
 
forum non conveniens
 motion objecting to Illinois as an inappropriate forum, it is foreclosed from filing an appeal from 
that order
.  With regard to Fleet, since it neglected to file a motion to dismiss within 90 days of its 
original
 answer (filed June 25, 2002) to the 
original
 pleading filed against it (the plaintiff's fourth amended complaint), it is equally foreclosed from raising such a defense in the future.  

We find the court's interpretation of Rule 187 erroneous based upon Illinois case law.  
Rule 187(a) provides in relevant part that a "
forum non conveniens
 [motion] must be filed by a party not later than 90 days after the last day allowed for the filing of that 
party's answer
."  (Emphasis added.) 134 Ill. 2d R. 187(a). 
 
The Committee Comments for paragraph (a) provide the following explanation for paragraph (a): "Paragraph (a) calculates the period for filing a 
forum non conveniens
 motion from the last day allowed for the filing of that party's answer. *** Paragraph (a) refers to '
that party's
 answer' to insure that a later-joined defendant is not foreclosed from filing a 
forum non conveniens
 motion by the failure of another defendant to do so in a timely manner." (Emphasis in original.)  134 Ill. 2d R. 187(a), Committee Comments. Regrettably, neither the rule itself nor the Committee Comments clarify the underlying issue of first impression presented in this case –  whether Rule 187 only permits a defendant to file one 
forum non conveniens 
motion within 90 days of filing his first answer to the plaintiff's complaint or whether the defendant is allowed to file successive or new 
forum non conveniens
 motions within 90 days after filing an answer to each of the plaintiffs' amended complaints.

Rule 187 was adopted in August of 1986 in response to a timeliness issue raised in 
Bell v. Louisville & Nashville R.R. Co.
, 106 Ill. 2d 135, 147 (1985).
 
In 
Bell
, the supreme court considered three consolidated cases where the first 
forum non conveniens
 motions were filed 39 months, 34 months, and 32 months, respectively, after the plaintiffs' complaints were filed.  
Bell
, 106 Ill. 2d at 149.  
In each case, the court ruled that defendants' delay in filing their motions to dismiss was unreasonable and affirmed the trial court's denial of defendants' request to change the forum.  In 
dicta
, the court did note that it was necessary to "conduct some discovery to determine whether the motion is appropriate and that under court rules discovery could not begin until all the defendants had appeared" (
Bell
, 106 Ill. 2d at 146
, citing 
Grant v. Starck
, 96 Ill. App. 3d 297, 300 (1981), and 
McDonald's Corp. v. Smargon
, 31 Ill. App. 3d 493, 499 (1975)); as such, a 
forum non conveniens
 motion "was not waived if not made before the date fixed for filing the answer."  
Bell
, 106 Ill. 2d at 146. 

Examining the timeliness of the defendants' motions, the 
Bell
 court reiterated that the animus for the creation of the 
forum non conveniens
 doctrine – 
equity
 – was " founded in considerations of fundamental fairness and sensible and effective judicial administration. "  
Bell
, 106 Ill. 2d at 146
, quoting 
Adkins v. Chicago Rock Island & Pacific R.R. Co.
, 54 Ill. 2d 511, 574 (1973).  The court stated that this equitable doctrine "aids the vigilant and not those who sleep on their rights."  
Bell
, 106 Ill. 2d at 146
. However, the 
Bell
 defendants did sleep on their rights; therefore, the defendants could not cloak themselves in equity's armament. Despite its decision to consider defendant's objection to forum, the court concluded that a waiver rule 
per se
, specifically delineating a time within which a defendant may request that jurisdiction be declined for 
forum non conveniens,
 was unnecessary.  
Bell
, 106 Ill. 2d at 146
.  

Perhaps in answer to the specially concurring opinion in 
Bell
(footnote: 3), the supreme court adopted Rule 187 approximately one year and five months after the 
Bell
 opinion was decided. Unfortunately, neither the
 
Bell
 decision nor Rule 187 addresses the issue presented in this case – whether a defendant may file a new 
forum non conveniens
 motion each time a plaintiff files an amended complaint.  However, notwithstanding the continued absence of Rule 187, perhaps in anticipation of its adoption, the court addressed a comparable issue in 
Kemner v. Monsanto Co.
, 
112 Ill. 2d 223, 238-40 (1986).
(footnote: 4)  The issue addressed in 
Kemner
, whether a defendant had a right to renew a 
forum non conveniens
 motion where new facts and case law were revealed subsequent to the filing of the
 initial motion, was answered in the affirmative by the supreme court.  
Kemner
, 112 Ill. 2d at 238-40.  
In 
Kemner
, the appellate court dismissed the defendant's appeal for lack of jurisdiction, concluding that the petition for leave to appeal was untimely.  
Kemner
, 112 Ill. 2d at 236.  Relying on reasoning in 
Leet v. Louisville & Nashville R.R. Co.
, 131 Ill. App. 3d 763 (1985), the appellate court reasoned that the 30-day period within which to file a petition for leave to appeal from an order denying a motion to dismiss on 
forum non conveniens
 grounds may not be tolled by filing a motion to reconsider that order.  
Kemner
, 112 Ill. 2d at 236.  Appealing to the supreme court, the defendant urged that the appellate court erred by relying on 
Leet
 because the defendant's contention was not that its motion to reconsider extended the 30-day jurisdictional period within which to appeal from the denial of its motion to dismiss.  
Kemner
, 112 Ill. 2d at 237.  Instead, the defendant in 
Kemner
 argued that its motion to reconsider "was in the nature of a new original motion to dismiss" presenting new factual information and new authorities, which were unavailable at the time the prior motions were filed.  
Kemner
, 112 Ill. 2d at 238.  The defendant in 
Kemner
 argued that since its petition for leave to appeal from the order denying its motion to reconsider was timely filed, the appellate court did have jurisdiction over its petition and erred in dismissing its appeal.  
Kemner
, 112 Ill. 2d at 238. 

The supreme court agreed with the defendant. The supreme court reasoned that it is inequitable to place the defendant in a position of having to make the choice between filing a 
forum non conveniens
 motion when the basis of filing it may not be clear or waiting to file the motion at the risk of having the motion denied due to delay. 
Kemner
, 112 Ill. 2d at 241-42.  The supreme court declined to place the defendant in such a situation and allowed the defendant to embrace the cloak of equity, "particularly where additional information is developed through discovery or where subsequent decisions are reported which may demonstrate the validity of the defendant's position on the renewed motion."  
Kemner
, 112 Ill. 2d at 242.

Utilizing the 
Kemner
 court's reasoning
 as a stepping stone for its decision, the supreme court in 
McClain v. Illinois Central Gulf R.R. Co.
, 121 Ill. 2d 278 (1988), concluded that a trial court's denial of the defendants' fifth 
forum non conveniens
 motion was not merely a reconsideration of prior orders because new matters were asserted, new witnesses were named and a new case was presented.  
McClain
, 121 Ill. 2d at 286.  We acknowledge that the facts in 
McClain
 reveal that one of the new matters asserted was a third-party complaint filed by the defendant, unlike the successive amended complaints that were filed by the plaintiff in this case. 
McClain
, 121 Ill. 2d at 286.  However, this difference is not determinative of the application of the 
McClain
 court's ruling to the facts of the case at bar.  
McClain
, 121 Ill. 2d at 286. 
 The 
McClain
 court also took into consideration the "additional witnesses named" and reversed  the trial court's determination that a subsequently filed motion challenging the forum was merely a reconsideration of prior orders, and thus not appealable. 
 
McClain
, 121 Ill. 2d at 286. 
The 
McClain
 court held that "taken as a whole" this amounted to a new 
forum non conveniens 
motion, and the trial court's order ruling on that motion was therefore appealable. 
McClain
, 121 Ill. 2d at 287. 

Once again, 
we are cognizant of the fact that Supreme Court Rule 187 was not adopted until after the trial court's interlocutory orders were entered in 
Kemner
 and 
McClain
.  The fact that Supreme Court Rule 187 was not in effect, however, does not prevent this court from considering the reasoning and the holdings in those cases.  The supreme court's decisions in 
Bell
, 
Kemner
 and 
McClain
 have not been reversed; therefore, the 90-day limitations period prescribed by Supreme Court Rule 187 must be applied and harmonized with those decisions.  

Following the reasoning in 
Kemner
 and 
McClain
, AAR's and Fleet's "renewed" motion to dismiss 
Layug
's fifth amended complaint and supporting memorandum filed November 26, 2002, did provide the court with new matter and additional case law (
First American Bank v. Guerine
, 198 Ill. 2d 511 (2002)), which had not been decided when AAR filed its original motion to dismiss 
Layug
's first amended complaint. 

With regard to the new matter, the record reflects that attached to the memorandum in support of the defendant's motion to dismiss the fifth amended complaint was the report of the independent investigation committee.  The defendants refer to this report in their motion to dismiss 
Layug's
 fifth amended complaint and detail certain facts contained within the report. Although the defendants do not make this argument in their memorandum, we note that based upon the date of the letter attached to the report, the report was not available to AAR when it filed its original motion to dismiss 
Layug's
 first amended complaint, on January 19, 2001.  The letter, dated January 3, 2001, requested that the Acting Executive Secretary of Cardenas conduct a fact-finding investigation into the cause of the crash.

In addition, the record establishes that unlike the defendants in 
Bell
, the defendants in this case have been "vigilant."  See 
Bell
, 106 Ill 2d at 146.  The record also established that subsequent to AAR filing its original motion to dismiss, 
Layug
 had filed four amended complaints within 1½ years.  Although the second amended complaint made no substantive changes, but only clarified language appointing the administrator of the decedent's estate, the third amended complaint added Fleet as a defendant and also added negligent entrustment, bailment and spoliation of evidence counts to the complaint.  One month later, before the defendants had an opportunity to file an answer or affirmative defenses to the amended complaint, plaintiff filed her fourth amended complaint adding the 
Pinol
 plaintiffs.  Although the defendants filed an answer to the fourth amended complaint before the 90-day period for filing a 
forum non conveniens
 motion expired (134 Ill. 2d R. 187), 
Layug 
filed her fifth amended complaint, once again adding new matters: strict products liability,
 count III (wrongful death) and count IV (survival action); Illinois common law of bailment
; and spoliation of evidence, count XI (all damages). 
The aforementioned facts provide demonstrative evidence of AAR's and Fleet's vigilance.

When faced with new matters, parties and theories in both the third, fourth  and fifth amended complaints, filed within five months of each other, 
AAR and Fleet filed a joint motion to dismiss 
Layug
's fifth amended complaint in which they discussed the independent investigation conducted by the Republic of the Philippines and the evidence from that investigation.  New cases were presented and the identities of potential witnesses were disclosed.  See 
McClain
, 121 Ill. 2d at 286 (a later filed 
forum non conveniens
 motion was a new motion as additional witnesses, matters and cases were before the court that were not in the prior motion).  Therefore, following the reasoning in 
Kemner
 and 
McClain
, a new challenge to forum is appropriate when new matter, new parties, or new causes of action or theories
 are brought forth in an amended complaint.  
See 
Bell
, 106 Ill. 2d 135; 
Kemner
, 112 Ill. 2d 223; 
McClain
, 121 Ill. 2d 278
.

In light of Illinois case law, we question the correctness of 
Layug
's argument, predicated on Rule 187, that a motion to dismiss based upon the doctrine of 
forum non conveniens
 is only timely if filed within 90 days of answering the 
original
 complaint.  See 
Bell
, 106 Ill. 2d 135; 
Kemner
, 112 Ill. 2d 223; 
McClain
, 121 Ill. 2d 278.  When new matters or factual allegations, theories of recovery and parties are added to an amended complaint, as with 
Layug
's fifth amended complaint, which were never a part of the original complaint, Illinois case law would permit the party to file another 
forum non conveniens 
motion.  
Bell
, 106 Ill. 2d 135; 
Kemner
, 112 Ill. 2d 223; 
McClain
, 121 Ill. 2d 278.  
We find equally perplexing the conclusion of the trial court that Rule 187 only allows a 
forum non conveniens
 challenge to the 
original
 
complaint.  The aforementioned arguments fail to acknowledge the equity and fundamental fairness considerations involved in the doctrine.  See 
In re Marriage of Clark
, 232 Ill. App. 3d 342, 350 (1992) (the appellate court declines to read Rule 187 as an 
absolute prohibition 
against filing a forum motion beyond the limit prescribed, relying on Rule 183 (134 Ill 2d R. 183), which allows a trial court, for good cause
, to extend the time for filing any pleading or the doing of any act which is required by the rules to be done within a limited period).

In further support of the importance of the equitable principles upon which the 
forum non conveniens
 doctrine is premised, the amendment statute, section 2-616(a) of the Code of Civil Procedure, supports our construction of Rule 187 that the defendants should be allowed to file successive motions to dismiss under the facts of this case.  735 ILCS 5/2-616(a) (West 2002). Section 2-616(a) provides in pertinent part:  

"§ 2-616. Amendments. (a) At any time before final judgment amendments may be allowed on just and reasonable terms, introducing any party who ought to have been joined as plaintiff or defendant, dismissing any party, changing the cause of action or defense or adding new causes of action or defenses, and in any matter, either of form or substance, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought or the defendant to make a defense or assert a cross claim." 735 ILCS 5/2-616(a) (West 2002).

The Illinois Supreme Court has interpreted section 2-616(a) to mean that where an amended pleading is complete in and of itself, and does not refer to or
 adopt a prior 
pleading, the earlier pleading ceases to be part of record for most purposes and is effectively abandoned and withdrawn.  
Barnett v. Zion Park District
, 171 Ill. 2d 378, 384 (1996); 735 ILCS 5/2-616(a) (West 2002)
;  
Bowman v. County of Lake
, 29 Ill. 2d 268, 272 (1963); see also, 
Saunders v. Michigan Avenue National Bank
, 278 Ill. App. 3d 307, 311 (1996), 
appeal denied
,167 Ill. 2d 569 (1996) (when an amendment is complete in itself and does not refer to or adopt prior pleading, earlier pleading ceases to be part of record for most purposes, being in effect abandoned and withdrawn).  In this case, 
Layug
 has filed six complaints.  Each subsequently filed amended complaint did not refer to, adopt or incorporate the prior pleading, but stood on its own.  Therefore, for purposes of jurisdiction over this appeal, the only complaint that would properly be
 before this court would be the fifth amended complaint, as all prior complaints are effectively abandoned and withdrawn.  See 
Barnett
, 171 Ill. 2d at 384;  
Bowman
, 29 Ill. 2d at 272; see also, 
Saunders
, 278 Ill. App. 3d at 311.

Finally, since 
Barnett
, 
Bowman
 and 
Saunders
 are clear that unless a subsequent, amended complaint refers to or adopts a prior pleading, the earlier pleading ceases to be a part of the record, it is disingenuous for 
Layug 
to assert that the defendants are foreclosed from filing a 
forum non conveniens
 motion attacking the fifth amended complaint because there was no motion to dismiss filed within 90 days of filing their answer to the fourth amended complaint.  The defendants filed an answer to the fourth amended complaint on June 25, 2002.  According to 
Layug's 
reasoning,
 a motion to change forum should have been filed by September 25, 2002.  
This conclusion is flawed since the facts indicate that 
Layug's
 fifth amended complaint, filed August 15, 2002, was filed 
prior to
 the expiration of the 90-day limitations period within which the defendants should have filed a motion to dismiss the fourth amended complaint.  It would be inequitable and contrary to Illinois case law to reach the conclusion advanced by 
Layug
.

In conclusion, based upon the supreme court's reasoning in 
Bell
, 
Kemner
, and 
McClain
, and section 2-616(a), we find that Rule 187 permitted the defendants to file successive 
forum non conveniens 
motions to dismiss against 
Layug
.  The defendants alleged new facts and new matter in their motion to dismiss 
Layug's
 fifth amended complaint.  In addition, the plaintiffs' amended complaints added new parties and causes of action.  
The record reveals that 
the defendants' second motion to dismiss, which was filed against 
Layug
 individually and not against the 
Pinol
 plaintiffs,
 was filed on November 26, 2002
.  The trial court's order denying the motion to dismiss was entered 
on April 8, 2003.  On April 21, 2003, within 30 days after the trial court's order was entered, the defendants filed 
a joint petition in the appellate court for leave to file an interlocutory appeal.  
Therefore, the appellate court has jurisdiction over the defendants' joint appeal because AAR and Fleet filed a petition in this court on April 21, 2003, within 30 days of the trial court's order denying their motion to dismiss 
Layug
's fifth amended complaint. See 166 Ill. 2d R. 306(b).

THE DOCTRINE OF
 FORUM NON CONVENIENS

In this case we must decide a 
forum non conveniens 
question. The doctrine of 
forum non conveniens
 is based upon considerations of fundamental fairness and sensible and effective judicial administration.  The doctrine allows the court in which the action was filed to decline jurisdiction and direct the lawsuit to an alternative forum that the court determines can better serve the convenience of the parties and the ends of justice.  
Dawdy v. Union Pacific R.R. Co.,
 207 Ill. 2d 167, 171-72 (2003)
;  
Vinson v. Allstate
, 144 Ill. 2d 306, 310 (1991);  
Wieser v. Missouri Pacific R.R. Co.
, 98 Ill. 2d 359, 365 (1983), quoting 
Adkins v. Chicago, Rock Island & Pacific R.R. Co.
, 54 Ill. 2d 511, 514 (1973); see 
Gulf Oil Corp. v. Gilbert
, 330 U.S. 501, 507, 91 L. Ed. 1055, 1062, 
67 S. Ct. 839, 842 (1947). 

In Illinois, the doctrine of 
forum non conveniens
 has two potential applications: 
interstate 
forum non conveniens
 and intrastate 
forum non conveniens. 
The 
doctrine was first recognized by our supreme court in 
Whitney v. Madden
,
 400 Ill. 185 (1948)
. 
 
Lambert v. Goodyear Tire & Rubber Co.
, 332 Ill. App. 3d 373, 377-78 (2002)
.When addressing the issue of 
interstate 
forum non conveniens,
 the focus of the trial court
 is on whether Illinois is an appropriate state in which to litigate the controversy.  When the issue of intrastate 
forum non conveniens
 arises, the focus of the trial court is on whether the case is being litigated in the most convenient county. 
Lambert
, 332 Ill. App. 3d at 378, citing
 3 R. Michael, Illinois Practice 
§ 
14.1 (1989).
  The same considerations of convenience and fairness apply equally in deciding the issue of 
forum for a dismissal motion based on 
interstate 
forum non conveniens
 or a dismissal motion based on 
intrastate 
forum non conveniens
.  
Torres v. Walsh
,
 98 Ill. 2d 338, 348 (1983)
.

In determining the appropriate forum in which the case should be tried, a court must balance the private and public interests
.  
Dawdy
, 207 Ill. 2d at 172, citing 
Gulf Oil
, 330 U.S. at 508, 91 L. Ed. at 1062, 
67 S. Ct. at 843. Private interest factors include: (1) the convenience of the parties; (2) the relative ease of access to sources of testimonial, documentary, and real evidence; (3) the availability of compulsory process to secure attendance of unwilling witnesses; (4) the cost to obtain the attendance of willing witn
esses; and (5) the possibility of viewing the premises, if appropriate; and all other practical problems that make a trial of a case easy, expeditious, and inexpensive.
  
Dawdy
, 207 Ill. 2d at 172; 
see also 
Vinson
, 144 Ill. 2d at 310; 
Bell
, 106 Ill. 2d at 143; 
Lambert
, 332 Ill. App. 3d at 379.

The relevant public interest factors include: (1) the administrative difficulties caused when litigation is handled in congested venues instead of being handled at its origin; (2) 
the unfairness of imposing jury duty upon residents of a county with no connection to the litigation; and (3) and the interest in having local controversies decided locally.  
Dawdy
, 207 Ill. 2d at 173, citing 
Gulf Oil
, 330 U.S. at 508-09, 91 L. Ed. at 1062-63
, 67 S. Ct. at 843; see also 
Cook v. General Electric Co.
, 146 Ill. 2d 548, 557 (1992);  
Vinson
, 144 Ill. 2d at 311.
 An additional consideration under the 
forum non conveniens
 doctrine is deference to the plaintiff's choice of forum.  A plaintiff's right to select the forum is substantial. Unless the factors weigh strongly in favor of transfer, the plaintiff's choice of forum should rarely be disturbed.  
Dawdy
, 207 Ill. 2d at 173, citing 
Griffith v. Mitsubishi Aircraft International Inc.
, 136 Ill. 2d 101, 106 (1990); see also 
Smith v. Silver Cross Hospital
, 312 Ill. App. 3d 210, 218 (2000) (The appellate court reasoned that the decedent's place of residence at the time of his death only mattered with respect to the deference, if any, to be accorded to plaintiff's choice of forum).  However, in a wrongful death case, where the decedent's residence and the state of the accident are not the same as the plaintiff's chosen forum, the plaintiff's choice is given 
somewhat
 less deference.  
Dawdy
, 207 Ill. 2d at 173-174; 
Guerine
, 198 Ill. 2d at 517.
  Nevertheless, this does not equal no deference.  
Dawdy
, 207 Ill. 2d at 174; 
Guerine
, 198 Ill. 2d at 518
. 
 The defendant must show that the plaintiff's chosen forum is inconvenient to the defendant and another forum is more convenient to all parties. 
Guerine
, 198 Ill. 2d at 518.  The defendant cannot assert that the plaintiff's chosen forum is inconvenient to the plaintiff.  
Guerine
, 198 Ill. 2d at 518.

In the case at bar, when deciding whether the trial court abused its discretion in denying the defendants' request for a change of forum, we have before us the court's November 20, 2002, order – involving the "02L" 
Ellis 
plaintiffs – 
and its 
April 8, 2003, order – involving 
Layug
.
  The sole issue raised by the defendants on appeal is whether the relevant public and private interest factors strongly favor dismissal of these cases from the circuit court of Cook County in order to be filed in the Philippines.
  However, as the determination of a 
forum non conveniens
 motion lies within the sound discretion of the trial court, we must address defendants' issue in the context of the applicable standard of review.  On review, the trial court's decision will be reversed only if it can be shown that the court abused its discretion in balancing the relevant factors.  
Dawdy
, 207 Ill. 2d at 176-77, citing 
Bland v. Norfolk & Western Ry. Co.
, 116 Ill. 2d 217, 223 (1987); 
Wieser
, 98 Ill. 2d at 365.  An abuse of discretion will be found where no reasonable person would take the view adopted by the trial court.  
Dawdy
, 207 Ill. 2d at 177, citing 
Schwartz v. Cortelloni
, 177 Ill. 2d 166, 176 (1997)
.  Based upon the foregoing considerations, we find that the trial court did not abuse its discretion in denying the defendants' motion to dismiss. 
 First, 
Layug
's choice of forum must be given deference because she is a resident of Illinois, though that deference is 
somewhat 
lessened because the site of the decedent's accident was the Philippines.  See 
Lambert
, 332 Ill. App. 3d at 380.  Second, the defendants have not provided the court with evidence that the private and public interest factors in this case 
weigh strongly in favor of dismissal of the action
; therefore, we will not disturb plaintiff's choice of forum.  See 
Dawdy
, 207 Ill. 2d at 173, citing 
Griffith
, 136 Ill. 2d at 106, quoting 
Jones v. Searle Laboratories
, 93 Ill. 2d 366, 372-73 (1982), quoting 
Gulf Oil
, 330 U.S. at 508, 91 L. Ed. at 1062, 
67 S. Ct. at 843.
 Finally, 
we find that an abuse of discretion has not occurred in this case because a reasonable person could take the view adopted by the trial court.  
Dawdy
, 207 Ill. 2d at 176-77.

Private Interest Factors

With regard to the convenience of the parties and the relative ease of access to the sources of proof, the defendants argue that the Philippines is a more convenient forum because at least 31 witnesses with information critical to the central issues in the case – what caused the crash – all reside in the Philippines.  They assert that these witnesses will be critical to establish the airplane's service and maintenance history with Air Philippines Corporation, as well as the Philippines pilots' training and experience.  In addition,
 all six members of the technical working group, responsible for the technical aspects of the crash investigation, are located in the Philippines and the Philippine attorneys for the family members of the victims of the crash have identified other potential witnesses on Samal Island.

Although we agree that these are valid points made by the defendants, we cannot agree that these factors strongly favor dismissal of the action.  As the trial court reasoned, it is uncontested that both of the defendants have their principal place of business in Illinois
. The court opined that "
it is incredulous for two Illinois resident corporations to argue that their home state is inconvenient to them to litigate this matter. It is also incredulous to observe that the defendants thoroughly ignore the fact that the theories of liability pled against them concern the alleged defective condition of the aircraft prior to its transfer to Air Philippines, and there has been no assertion by the defendants that the sources of proof, records, and witness on these issues are not located in Illinois."
  ( Emphasis added.) As the court noted in 
Dawdy
, "where the potential trial witnesses are scattered among several counties, including the plaintiff's chosen forum, and no single county enjoys a predominant connection to the litigation, the plaintiff may not be deprived of his or her chosen forum."  
Dawdy
, 207 Ill. 2d at 183-84, citing 
Guerine
, 198 Ill. 2d at 526.  Furthermore, the evidence does not show that the plaintiff's chosen forum is in fact 
inconvenient
 to the defendants.  See 
Guerine
, 198 Ill. 2d at 518.

The trial court also points out that there is no need in this case to view the accident site because it was paved over several days after the accident occurred and some plane parts, including, the engine, were buried by airline personnel
.  Although it is true that the court in 
Dawdy
 concluded that this private interest factor is "not concerned with the 
necessity
 of viewing the site of the injury, but rather is concerned with the 
possibility
 of viewing the site, if appropriate". (Emphasis in original.) (
Dawdy
, 207 Ill. 2d at 178, citing 
Gulf Oil
, 330 U.S. at 508, L. Ed. At 1062, 67 S. Ct. At 843). We find that viewing the accident site is neither necessary nor possible in this case.  In addition, "the necessity or propriety of viewing the scene is a decision left within the discretion of the trial court."  
Dawdy
, 207 Ill. 2d at 179.

As for the compulsory process of unwilling witnesses and the cost of obtaining the attendance of willing witnesses, 
these factors do not strongly favor dismissal of the action
.  As the court stated in its memorandum order, compulsory process of unwilling witnesses weighs equally against Cook County, Illinois, and the Philippines.  If the case remains in Illinois, witnesses in the Philippines are not compelled
 to come to the United States; and, if the forum is changed to the Philippines, Illinois witnesses, including the plaintiff
, could not be compelled to appear in the Philippines.

The defendants' reliance on several federal cases is misplaced. 
  In 
Nolan v. Boeing Co.
, 919 F. 2d 1058, 1061 (5th Cir. 1990), 
the plaintiffs filed a cause of action in Louisiana involving an aircraft crash that occurred in England.  
Nolan
, 919 F.2d at 1060-61.  After filing a third-party action for contribution and indemnity against the engine manufacturer (owned by the French government), the aircraft manufacturer sought to remove the case from Louisiana to the United Kingdom 
under the Foreign Sovereign Immunities Act.  
Nolan
, 919 F. 2d at 1061. 
 The federal district court granted the defendant's request, and the plaintiffs appealed. 

The facts in 
Nolan
 are clearly distinguishable from the facts in the case at bar because, unlike the case at bar, the plaintiffs in 
Nolan
 had "no previous connection with the state" in which they filed the cause of action and "none of the activities out of which the defendants' alleged liability (arose) took place in the state in [which the lawsuit was filed]." 
Nolan
, 919 F.2d at 1061 n.2. (
affirming the trial court's decision, the United States Court of Appeals noted in a footnote that "the plaintiffs [residents of New York and Washington] have no previous connection with the state of Louisiana. *** [N]one of the defendants are citizens of Louisiana, and although Boeing conducts business in Louisiana, none of the activities out of which the defendants' alleged liability arises took place in Louisiana").  
Nolan
, 919 F.2d at 1061 n.2. 
In the case at bar, AAR is incorporated and does business in Illinois; Fleet does business in Illinois, and the administrator for 
Layug
 is a
 resident of Illinois
.  Unlike the defendants in this case, none of defendants in 
Nolan
 were incorporated in Louisiana.  See 
Nolan
, 919 F.2d at 1061 (
Boeing is a Delaware corporation with its principal place of business in Washington; CFMI is a Delaware corporation with its principal place of business in Ohio; and GE is a New York corporation with its principal place of business in New York)
.  Finally, the court in 
Nolan
 concluded:  "If this case were remanded to Louisiana state court, the defendants would be required to commence separate actions in the United Kingdom against British companies over whom the Louisiana courts would not have personal jurisdiction.  Because the 'entire case and all parties' would not be before it, the state court clearly is not a suitable and convenient forum."  
Nolan
, 919 F.2d at 1070.  
Here, the trial court is not presented with the issue of jurisdiction over the parties.  The Illinois trial court would  have jurisdiction over 
all
 the parties to this lawsuit.

Piper Aircraft Co. v. Reyno
, 454 U.S. 235, 70 L. Ed. 2d 419, 
102 S. Ct. 252 (1981), is also distinguishable.  Although at first glance, the facts of 
Piper
 appear to be analogous to the facts in the case at bar, a more thorough analysis of the case proves otherwise. In 
Piper
, the United States Supreme Court reversed a ruling by the court of appeals and granted defendants' request for a change of forum from Pennsylvania, where plaintiff filed the case, to Scotland, where the airplane crash took place.  
Piper
, 454 U.S. at 261, 70 L. Ed. 2d at 439
, 102 S. Ct. at 268-69.  Although the court did reason that if defendants could show that the accident was caused by pilot error, rather than a design defect, they would be relieved of liability, this was an isolated sentence in the court's overall analysis.  The court began its analysis of the private interest factors by noting that "particularly with respect to the question of relative ease of access to sources of proof, the private interests point in both directions."  
Piper
, 454 U.S. at 258, 70 L. Ed. 2d at 419
, 102 S. Ct. at 269.  
The court ruled in favor of transfer, however,
 because the public interest factors weighed strongly in favor of Scotland as a preferable forum
. 
Piper
, 454 U.S. at 259-261, 70 L. Ed. 2d at 419
, 102 S. Ct. at 269
.  That is not the situation in the case at bar.  In this case, neither the private interest nor the public interest factors 
weigh strongly in favor of dismissal of the action
, and the trial court's decision to deny the defendants' motion to change the forum of the case from Illinois to the Philippines was not an abuse of its discretion.

In addition, unlike the plaintiff in 
Moore v. Chicago & North Western Transportation Co.
, 99 Ill. 2d 73, 78 (1983), where the cause of action was based upon theories of negligence only, the plaintiff in this case has alleged 
both 
negligence 
and
 defective design theories.  These theories will require sources of proof not only from the Philippines, but also from the defendants' corporations located here in Illinois.  The facts in 
Moore
 are also distinguishable because plaintiff had no 
relationship to the litigation except as a nominal party, since she was appointed by the court.  
Moore
, 99 Ill. 2d at 79.  Finally, 
Moore
 is readily distinguishable from the instant case because: (1) in 
Moore
, the only factor connecting the defendant with Illinois was that the defendant's principal place of business was located in Cook County (See
 
Adkins
, 
54 Ill. 2d at 515 
(in removing the case from Illinois, the court reasoned that the fact that a railroad does business in Illinois has been held not to be controlling in disposing of a motion to dismiss on the basis of 
forum non conveniens
 because it is "assum[ed] that both courts can obtain jurisdiction over the defendant")
; (2) 
it was possible and necessary for the jury to 
view the scene of the accident in 
Moore
; and (3) no witnesses or medical evidence was in the forum chosen by the plaintiff in 
Moore
.  
Moore
, 99 Ill. 2d at 79
.

The defendants also raise an issue regarding the inability to pursue a third-party claim against the Philippines air transportation office.  The plaintiffs counter, however, that the defendants have waived any further cross claims related to the accident and that under the lease agreement with Air Philippines, the defendants have a right to seek indemnity against them in Illinois courts under Illinois law.
(footnote: 5)  Initially, it is important to understand that cross-claims or counterclaims are different from third party actions.  See 735 ILCS 5/2-608(a), 2-404(a) (West 2002); see also 
People v. Fiorini
, 143 Ill. 2d 318, 329-30 (1991) (the supreme court discussed the difference between counterclaims and third-party complaints by stating that a counterclaim is an action brought by a named party against another existing party to the action; by contrast, a third-party complaint is an action brought by an existing party against one or more new parties to the original suit).  Therefore, although the defendants might have waived any right to bring a cross-claim against a potential Philippine defendant, they have not waived such a right with regards to filing a third-party action.  See 735 ILCS 5/2-608(a); 2-406(a) (West 2002).

However, although a third-party claim brought in Illinois courts against Air Philippines may be unobtainable due to the restriction of the Foreign Sovereign Immunities Act
, under the aircraft lease agreement between AAR and Air Philippines, paragraph 10 provides that AAR may seek indemnification from Air Philippines here in Illinois.  Paragraph 20 of the lease agreement provides that any causes of action that may arise under the terms of the lease agreement are subject to Illinois law.  Therefore, the defendants may bring an action against Air Philippines for indemnification.  If, in fact, such a claim is barred by the Foreign Sovereign Immunities Act
, this should not weigh in favor of dismissal of the action, as the defendants agreed to the terms of the lease agreement presumably in full awareness of all of its implications and ramifications.  It would be disingenuous for them to now argue that they would prefer to litigate the indemnification action against Air Philippines in the Philippines.

Furthermore, it would have been premature for the trial court to remove the case on this basis as no third-party cause of action has been filed in this case, nor does the record indicate that it has been contemplated.  See 
Nolan
, 919 F.2d at 1066 (where defendant obtained leave of court and filed a third-party action against a foreign defendant).  As such, this is not a factor that would encourage us to overturn the trial court's denial of the defendants' motion to dismiss the cause of action.

Public Interest Factors

Defendants argue the public interest factors weigh strongly in favor of dismissal as well because the controversy is localized to the Philippines.  In addition, the defendants assert that it would be an unfair burden and expense on the citizens of Cook County to allow the controversy to remain in the Cook County court system.  Finally, they argue that the Cook County court system is already congested and overcrowded.

We disagree with the defendants' contention that these factors weigh strongly in favor of dismissal.  First, with regard to having localized controversies decided locally, we agree with the trial court's assessment that Cook County and the Philippines have an equal interest in deciding the controversy surrounding the plane crash.  It is true that the crash actually occurred in the Philippines and the residents of the Philippines obviously have a concern regarding the possibility of alleged negligence that may have occurred due to pilot or air traffic controller error.  However, the residents of Illinois are certainly interested in this case because the aircraft was owned and/or operated by corporations that do business in the State of Illinois and take advantage of Illinois law; they are concerned about resident corporations and the quality of their products
; and one of the administrators of the plaintiffs' cases is an Illinois resident who is related to one of the decedents. 

Second, with regard to the unfairness to Illinois citizens of having the expense and burden of jury duty imposed upon them, the 
Guerine
 court's reasoning is sound.  The 
Guerine
 court reasoned that where the potential trial witnesses are scattered among different forums, neither forum enjoys a predominant connection to the litigation.  See 
Guerine
, 198 Ill. 2d at 526; see also 
Dawd
y, 207 Ill. 2d at 184 (None of the potential trial witnesses resided in the plaintiff's chosen forum and only one defendant maintained a post-office box there; therefore, plaintiff's chosen forum had no predominant connection to the case).  
The prospective witnesses in this case are located in Illinois and in the Philippines. In addition, it
 is
 not an unfair burden because Illinois residents are interested in, and may be affected by, Illinois corporations that manufacture products and engage in financial transactions in the state of Illinois.  Although it may be coined as a burden, it is not an unfair one.

Third, the defendants are correct that Cook County's court system is congested.  However, "[t]he court congestion factor, by itself, is relatively insignificant [citations] and is not sufficient to justify transfer of venue when none of the other relevant factors weigh strongly in favor of transfer."  
Dawdy
, 207 Ill. 2d at 181, citing 
Guerine
, 198 Ill. 2d at 517 and 
Griffith
, 136 Ill. 2d at 114.  As all of the other public interest factors do not strongly favor dismissal of the action, we find that court congestion alone is not dispositive of the forum issue in this case.

In conclusion, although we believe that the trial court's determination of an appropriate forum could have been decided in favor of either Cook County, Illinois, or the Philippines, we cannot hold that an abuse of the court's discretion has occurred here.  As the supreme court so aptly concluded in 
Guerine
 (where the supreme court held that the trial court abused its discretion by granting a motion to transfer), recognizing that Illinois 
forum non conveniens
 can be obscure, "a trial court abuses its discretion in granting an intrastate 
forum non conveniens
 motion to transfer venue where, as here, the potential trial witnesses are scattered among several counties, including plaintiff's chosen forum, and no single county enjoys a predominant connection to the litigation.  The
 balance of [both private and public interest] factors must strongly favor transfer of the case
 before the plaintiff can be deprived of his chosen forum."  (Emphasis added.) 
Guerine
, 198 Ill. 2d at 526; see also 
Torres
,
 98 Ill. 2d at 349 (
the same considerations of convenience and fairness routinely apply equally in deciding the issue of 
forum for a dismissal motion based on 
interstate 
forum non conveniens
 and a dismissal motion based on 
intrastate 
forum non conveniens
).  In this case, the trial court's November 20, 2002, and April 8, 2003, orders denying the defendants' motions to dismiss these cases in the circuit court in order to file the cases in the Philippines were not an abuse of discretion because the private and public interest factors do not strongly favor dismissal of the cases. Therefore, we will not reverse the trial court's orders.

For the foregoing reasons, the orders entered by the trial court are affirmed.

Affirmed.

CAMPBELL, P.J., and O'BRIEN, concur.

FOOTNOTES
1:
The 24 complaints are not
 
contained in the record.

2:
During oral argument before this court on September 21, 2004, the defendants admitted that their joint motion to dismiss the fifth amended complaint was 
only
 against 
Layug
.  

3:
Justice Moran wrote a specially concurring opinion in which he stated: 

"I write separately, however, to express concern with the majority's decision not to set a specific time in which a defendant must ask the court to decline jurisdiction on  the basis of 
forum non conveniens
. The majority's reluctance to establish a 
per se
 rule is understandable. Whether it is 'fair' or 'sensible' to dismiss a case often turns on its particular facts and circumstances.  Nevertheless, I believe that today's decision provides no guidance whatsoever to trial courts or parties.  As such, defendants will be placed in a  precarious situation.  They have no indication as to how much of a delay will be fatal to their success. This is particularly troublesome in light of the fact that defendants must conduct some discovery before they can determine whether a motion based on the 
forum non conveniens
 doctrine is appropriate." 
Bell
, 106 Ill. 2d at 151 (Moran, J., specially  concurring).

4:
In 
Kemner
, the court did note that Rule 187 would be effective August 1, 1986.  
Kemner
, 112 Ill. 2d at 242.  The court did not, however, discuss the rule's implications on future 
forum non conveniens
 motions. 

5:
The record is unclear as to whom the defendants' third-party claim would be against.  Defendants mention the Philippines Air Transportation Office and the plaintiffs mention Air Philippines.  However, for purposes of this appeal, it is a non-issue as defendants have not filed such a claim and there is no pleading in the record on appeal which suggests that such an action will be filed.