Fourth Division

March 19, 1998

Nos. 1-97-2306, 1-97-4082 Cons.

WHIRLPOOL CORPORATION, )  APPEAL FROM THE

)  CIRCUIT COURT OF

Plaintiff-Appellant, )  COOK COUNTY.

)

v. )

)

CERTAIN UNDERWRITERS AT LLOYD'S LONDON, )  HONORABLE

)  RONALD C. RILEY,

Defendant-Appellee. )  JUDGE PRESIDING.

JUSTICE WOLFSON delivered the opinion of the court:

There is nothing unusual about litigants jockeying for position.  Sometimes position matters, sometimes it does not.  Here, for four years the litigants have waged a fierce battle over which forum will host their pollution insurance coverage dispute.  Here, apparently, position matters.  We affirm the trial judge's dismissal of the lawsuit on 
forum
 
non
 
conveniens
 grounds.

FACTS

In the early 1970s, Whirlpool, a Delaware corporation with its business headquarters in Michigan, sought excess pollution insurance coverage on the "London Market."  It contacted Bowes & Company (Bowes), an independent Illinois broker, which "placed" insurance in London.  After meeting with Whirlpool representatives in Michigan and discussing Whirlpool's insurance requirements, Bowes contacted J.H. Minet & Company, Ltd. (Minet), a London insurance broker, with this information.

Minet, in turn, contacted the "London Market" to find underwriters willing to "obtain the risk" of insuring Whirlpool.  Minet found "lead underwriters" Janson Green, Ltd. and Certain Companies per H.S. Weavers Underwriters (Agencies) Ltd. in Lloyd's insurance syndicate to provide coverage for Whirlpool.  The underwriters evaluated Whirlpool's risk and conveyed their proposed terms to Minet.  Minet conveyed these terms to Bowes, and Bowes conveyed these terms to Whirlpool.  Whirlpool agreed to these terms.

Then the communication chain reversed: Whirlpool contacted Bowes, who contacted Minet, who contacted Lloyd's underwriters.  According to Bowes representative, Arthur Travis, Whirlpool's coverage began when Lloyd's confirmed: "100 percent placed with underwriters and London market as per our terms."  

Travis described this long-distance procedure in his deposition:

"The underwriters [at Lloyd's], the insurers, would--they have the risk and they would present terms saying they would write the risk with these terms and conditions and with this cost.  That would come to the London broker [Minet] who would put it in form to send to us saying here is the underwriters' position.

We [Bowes], in turn, go to the insured, Whirlpool and say here are the terms that London is willing to entertain to insure us.  Whirlpool would then make a decision if they wanted those terms or not.  If they did, they would have me place it on an effective date.

I would cable London and say, 'The insured has given us an order to place those terms,' and then London would come back with a cable saying it has been bound and placed, and that would be conveyed back to the insured."

After Lloyd's confirmation, Minet sent its "cover note" summarizing Whirlpool's policy and terms to Bowes, and Bowes sent its own cover note to Whirlpool.  Then Minet drafted the formal policy.  In a 1971 letter to Whirlpool, Bowes representative Frank Hunter noted, "The lead Underwriter has to approve the final policy forms ***."  According to Travis, formal policies to replace interim cover notes were "[m]anufactured in London" by either Lloyd's or Minet and sent to Bowes.  Lloyd's underwriter Peter Lowsley-Williams, in his affidavit, agreed: "The policies were negotiated and issued in London.  The policy documents in the ordinary course of business would have been issued in London and sent by the London broker [Minet] to the American broker [Bowes] and from there to the Assured [Whirlpool]."  Formal policies often followed cover notes two years after the policies' effective dates.

During their relationship Whirlpool and Lloyd's never communicated directly, only through Bowes and Minet, respectively.  According to Travis, Bowes did not act as an agent for either Whirlpool or Lloyd's, but rather as a conduit for information: "We would present to the insured and to the insurer the information."  Travis said Bowes did not have the authority to bind Lloyd's into insuring Whirlpool.

Additionally, Lloyd's public relations brochure said: "A Lloyd's broker [presumably Minet] is not an insurance agent.  He does not represent the underwriters the same way as an insurance company agent.  He is, first and foremost, the representative of the insured [Whirlpool] ***."  However, in his deposition Whirlpool's insurance manager, Jake Paschall, said Whirlpool considered Bowes an agent of Lloyd's underwriters: "[A]s far as we were concerned Bowes spoke for the insurers."

The policy became effective on February 15, 1971.  Under the policy Whirlpool would make payment of premiums and provide notice of occurrences to Bowes.  However, Lowsley-Williams' affidavit disputed the significance of Bowes role: "[T]he designation of Bowes & Company was made as an accommodation to the Assured so that the Assured could make payment of premium and give notice of occurrences to one entity rather than several insurers throughout the London Market."  Lloyd's underwriter Peter Wilson, in his affidavit, corroborated Lowsley-Williams' account.  Additionally, Bowes issued endorsements only after confirmation from Lloyd's.  Through several renewals, and some changes, the policy remained in effect through May 31, 1977.

Beginning in 1974, Whirlpool's Fort Smith Division disposed of its solid and liquid waste at the Industrial Waste Control (IWC) facility near Fort Smith, Arkansas.  Whirlpool closed the Fort Smith IWC facility in 1977.  In 1982, the United States Environmental Protection Agency named the Fort Smith facility a "superfund" site and Whirlpool a potentially responsible party under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C.A, §9601 
et
 
seq.
 (West 1995 & Supp. 1997).  By the 1990s, Whirlpool had incurred more than $5,000,000 in investigation and remediation (clean-up) costs at the Fort Smith IWC facility.

In 1988, Whirlpool filed suit in Michigan State court against its primary insurers.  Whirlpool eventually settled this suit.  Knowing its primary insurance would not cover the clean-up costs, Whirlpool notified Lloyd's an occurrence might have happened while Lloyd's still provided coverage in the 1970s.  In 1989, Lloyd's reserved its rights under the policies.

On April 3, 1993, Whirlpool filed a declaratory judgment action in the circuit court of Cook County against Lloyd's.  Whirlpool alleged Lloyd's failed to fulfill its contractual obligation to provide excess pollution coverage for the 1970s occurrence which necessitated the clean-up costs.  Lloyd's, represented here by one of its underwriters, Garety and Companies (Garety), filed a 
forum
 
non
 
conveniens
 motion to dismiss.

On January 11, 1994, Judge Edward Hofert granted this motion.  The court said:

"[I]f the laws of the State of Illinois apply, they can be applied by other courts other than this court.  Plaintiff [Whirlpool] is not a resident of this State.  The defendant [Garety] is not.  The only issue that possibly could conceivably [a]ffect Illinois has to do with agency, and I see no reason why that cannot be resolved otherwise.  And whether or not the laws of this state can be applied, can be applied by any state court.  I see no compelling reason for this state to become involved in this case."

In denying Whirlpool's motion to reconsider, the court again noted Whirlpool was not an Illinois resident and Illinois had "plenty of crowded courts and plenty of cases."

Whirlpool appealed, and this court vacated and remanded the 
forum
 
non
 
conveniens
 dismissal, concluding:

"There is no indication in this record that the trial judge weighed the various private and public factors that enter into a 
forum
 
non
 
conveniens
 analysis.  ***

We find the trial court abused its discretion  because it failed to weigh the relevant factors when deciding whether 'another forum can better serve the convenience of the parties and the ends of justice.'"  
Whirlpool Corp. v. Certain Underwriters at Lloyd's London
 [
Whirlpool I
], 278 Ill. App. 3d 175, 182, 662 N.E.2d 467 (quoting 
McClain v. Illinois Central Gulf R.R. Co.
, 121 Ill. 2d 278, 288, 520 N.E.2d 368 (1988)).

On remand, Whirlpool filed an initial motion to reconsider.  Judge Margaret McBride entered and continued this motion, and instead granted Garety's motion to reopen discovery limited to "
forum
 
non
 
conveniens
 issues."  Garety filed another 
forum
 
non conveniens
 motion to dismiss.  On May 28, 1997, Judge Ronald Riley granted Garety's motion.

Judge Riley, saying he was "engaged in the weighing process that the cases talk about," considered the following private and public factors: location of witnesses and documentary evidence; the asserted locations of contract negotiation and execution; the interest of Michigan courts; and the burden of jury service on Cook County residents.  The court agreed with Garety in finding the contract was not entered into in Illinois.  The court also noted the residence of the parties.  Although conceding "I wouldn't know where to transfer it to, folks," the court concluded: "Illinois *** has no interest in this litigation."  (In a prior order, the court denied Whirlpool's motion to strike Lowsley-Williams' and Wilson's affidavits; Whirlpool did not appeal this order.)

Whirlpool filed another motion to reconsider before the trial court.  Whirlpool also filed a petition for leave to appeal the 
forum
 
non
 
conveniens
 dismissal under Illinois Supreme Court Rule 306(a)(2).  See 155 Ill. 2d R.306(a)(2).  This court granted Whirlpool's petition.  The trial court denied Whirlpool's motion to reconsider, and Whirlpool also appealed that order under Rule 301.  See 134 Ill. 2d R.301.  This court consolidated these cases.

On September 27, 1994, Garety filed a declaratory judgment action against Whirlpool in Michigan Federal court.  This suit concerned Lloyd's liability for clean-up costs at the Fort Smith IWC facility and 12 other pollution sites across the country.  After the parties had conducted some discovery, Whirlpool filed an abstention motion to stay the Federal court proceedings.  Initially, the Federal court rejected Whirlpool's motion.  However, after 
Whirlpool I
, the Federal court stayed Garety's suit, tentatively noting "the significant interest that the State of Illinois may have in this dispute relating to insurance contracts potentially subject to Illinois law ***."  Garety's Federal case remains stayed, pending the outcome of Whirlpool's second appeal here.

DECISION

Whirlpool accuses Garety of forum shopping by filing a Federal court lawsuit in Michigan.  Garety could level a similar charge at Whirlpool for filing suit in Illinois.  As noted in 
Whirlpool I
: "This dispute represents more than a mere jockeying for position.  The stakes are high.  The insurance policies contain much-litigated pollution exclusion clauses.  There is no coverage unless the spill was 'sudden and accidental.'"  
Whirlpool I
, 278 Ill. App. 3d at 182.  The result of this appeal could be outcome determinative: Illinois law might provide coverage (see 
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 607 N.E.2d 1204 (1992)); Michigan law might deny coverage (see 
Upjohn v. New Hampshire Insurance Co.
, 438 Mich. 197, 476 N.W.2d 392 (1991)).  Arkansas courts have not answered this question.  See 
Minerva Enterprises, Inc. v. Bituminous Casualty Corp.
, 312 Ark. 128, 851 S.W.2d 403 (1993)(addressing pollution exclusion clauses, but not "sudden and accidental" language); see also 
Ratliff Enterprises, Inc. v. American Employers Insurance Co.
, No. CA97-19 (Ark. Ct. App. 1997)(discussing "sudden and accidental" language in a non-pollution, insurance context).

Resolution of Whirlpool's second appeal lies in the answers to two related questions: (1) Did the trial court follow the appellate court's mandate?  And (2) if so, did the trial court abuse its discretion in granting Garety's 
forum
 
non
 
conveniens
 motion to dismiss?

1. 
Whirlpool I
 and its mandate

"The mandate of a reviewing court is the transmittal of that court's judgment to the circuit court, which revests the latter with jurisdiction.  [Citation.]  When a judgment is reversed by a reviewing court, that judgment is final upon all questions decided, and if the cause is remanded, the circuit court can take only such action as conforms to the reviewing court's judgment.  [Citation.]  That is, the circuit court may only do those things directed in the mandate; it has no authority to act beyond the mandate's dictates.  [Citation.]

When the circuit court's action upon remand is inconsistent with the reviewing court's mandate, it is subject to reversal on appeal."  
Mancuso v. Beach
, 187 Ill. App. 3d 388, 391, 543 N.E.2d 256 (1989)(citing 
PSL Realty Co. v. Granite Investment Co.
, 86 Ill. 2d 291, 304, 427 N.E.2d 563 (1981)).

Generally, the trial court must follow precisely the appellate court's mandate.  
In re Marriage of Jones
, 187 Ill. App. 3d 206, 215, 543 N.E.2d 119 (1989).  However, when the appellate court's mandate is not specific, the trial court must consult the context of the mandate to determine what further proceedings would comport with the opinion.  
People ex rel. Bernardi v. City of Highland Park
, 225 Ill. App. 3d 477, 482, 588 N.E.2d 427 (1992).

Here, this court instructed the trial court as follows:

"For the foregoing reasons, we vacate the trial court's order of dismissal and remand the case for consideration of the defendants' 
forum
 
non
 
conveniens
 motion, consistent with the views expressed in this opinion."  
Whirlpool I
, 278 Ill. App. 3d at 183.

Whirlpool contends Judge McBride should not have reopened discovery and Judge Riley should not have allowed Garety to submit new evidence on its renewed 
forum
 
non
 
conveniens
 motion to dismiss.  When a case is remanded for proceedings consistent with the appellate court's opinion, "the only restriction upon the introduction of new evidence in the trial court is that such evidence should neither be inconsistent with the contents of our opinion, nor introduce grounds which did not exist at the original hearing."  
Glass v. Peitchel
, 63 Ill. App. 3d 57, 60, 380 N.E.2d 420 (1978).

Illinois Supreme Court Rule 187(b) provides: "Hearings on motions to dismiss or transfer the action under the doctrine of 
forum
 
non
 
conveniens
 shall be scheduled so as to allow the parties sufficient time to conduct discovery on issues of fact raised by such motions."  107 Ill. 2d R. 187(b).  This rule gives the trial court discretion on whether to allow discovery on 
forum
 
non
 
conveniens
 issues.  See 107 Ill. 2d R. 187, Committee Comments.

Whirlpool's "two bites at the apple" contention (see 
Inland Real Estate Corp. v. City of Palatine
, 179 Ill. App. 3d 1001, 1005, 535 N.E.2d 42 (1989)) ignores the procedural posture of this case on remand.  While this court vacated the dismissal order and remanded for consideration of Garety's 
forum
 
non
 
conveniens
 motion, reopening discovery was appropriate.  First, Judge McBride, who replaced Judge Hofert, could not effectively reconsider Garety's motion without dissecting an unfamiliar record and so exercised her discretion to allow more discovery on Garety's second motion.  Similarly, Judge Riley, who replaced Judge McBride, could not have weighed the 
forum
 
non
 
conveniens
 factors without examining an unfamiliar record and also exercised his discretion to allow more discovery.  Second, the trial court could not reconsider Garety's motion with respect to the 
forum non
 
conveniens
 factors enumerated in 
Whirlpool I
 without more factual development.

This court in 
Whirlpool I
 seemed to say the contract was entered into in Illinois.  See 
Whirlpool I
, 278 Ill. App. 3d at 182 ("the fact that the contract was entered into in Illinois").  However, this comment was casual 
obiter
 
dicta
.  It never should have been made.  We were not called on, and did not intend, to decide this issue.  In the first appeal, the record provided an incomplete picture of the place of contract.  The trial court, under two different judges, reopened discovery and accepted evidence on this issue, eventually finding the contract was not entered into in Illinois.  We do not review that decision.

Although the trial court could have more clearly evaluated the 
forum
 
non
 
conveniens
 factors, the record demonstrates the trial court conducted "the required weighing process" (
Whirlpool I
, 278 Ill. App. 3d at 181) before granting Garety's motion, and thus complied with this court's mandate.

2. 
Forum non conveniens
 factors and trial court discretion

Forum
 
non
 
conveniens
 is an equitable doctrine which allows a court to decline jurisdiction where a trial in another forum "would better serve the ends of justice."  
Vinson v. Allstate
, 144 Ill. 2d 306, 310, 579 N.E.2d 857 (1991).  This common law doctrine applies on an interstate basis, and the trial court can dismiss a case which has "no practical connection to the forum" where it was filed.  
Vinson
, 144 Ill. 2d at 310.  The doctrine presupposes the existence of more than one court with jurisdiction to hear the case.  
Peile v. Skelgas, Inc.
, 163 Ill. 2d 323, 645 N.E.2d 184 (1994); 
Elling v. State Farm Mutual Automobile Insurance Co.
, 291 Ill. App. 3d 311, 683 N.E.2d 929 (1997).

When ruling on a 
forum
 
non
 
conveniens
 motion, the trial court must balance private and public interests.  
Kwasniewski v. Schaid
, 153 Ill. 2d 550, 607 N.E.2d 214 (1992).  

The private interest factors include: "(1) the convenience of the parties; (2) the relative ease of access to sources of proof; (3) the accessibility of witnesses; and (4) 'all other practical problems that make trial of a case easy, expeditious and inexpensive.'"  
Whirlpool I
, 278 Ill. App. 3d at 181 (quoting 
Kwasniewski
, 153 Ill. 2d at 553).  Other private interest factors include the availability of compulsory process, the cost of obtaining attendance of willing witnesses, and the ability to view the premises (if appropriate).  
Elling
, 291 Ill. App. 3d at 314.

The public interest factors include: "(1) the congestion of the court dockets; (2) the interest in deciding localized controversies; and (3) the unfairness of imposing jury duty on residents of a county [or a state] with little connection to the litigation."  
Whirlpool I
, 278 Ill. App. 3d at 181.  Court congestion is a relatively insignificant factor, especially where the record does not show the other forum would resolve the case more quickly.  See 
Peile
, 163 Ill. 2d at 342-43; 
Kwasniewski
, 153 Ill. 2d at 555.

The private/public balance is tipped in favor of the plaintiff's chosen forum.  The 
forum
 
non
 
conveniens
 factors: 

"*** must strongly favor the defendant in order to override the plaintiff's statutory right to select the forum.  [Citation.]  However, this right is accorded less deference when the plaintiff does not reside in the county [or state] he has chosen [citation] and the situs of the injury is not located in the chosen forum."  
Elling
, 291 Ill. App. 3d at 314.

See 
Schoon v. Hill
, 207 Ill. App. 3d 601, 605, 566 N.E.2d 718 (1991)("Although a plaintiff's choice of forum is generally accorded great weight and will not be disturbed unless the balance of factors strongly favors defendant, a plaintiff's choice is entitled to less deference when plaintiff chooses a foreign forum.").

   The defendant bears the burden of proving the plaintiff's chosen forum is inconvenient to the defendant and another forum is more convenient to all parties.  See 
Hall v. CBI Industries, Inc.
, 264 Ill. App. 3d 299, 303, 636 N.E.2d 1037 (1994).  In other words, the defendant cannot assert the plaintiff's chosen forum is inconvenient to the plaintiff.  See 
Hoffmeister v. K Mart Corp.
, 181 Ill. App. 3d 739, 537 N.E.2d 460 (1989). 

In ruling on a 
forum
 
non
 
conveniens
 motion, a trial court has considerable discretion, and this court will disturb the trial court's ruling only if the trial court abused its discretion in weighing the relevant factors.  
Peile
, 163 Ill. 2d at 336
.  In reviewing the trial court's decision to grant a 
forum non
 
conveniens
 motion to dismiss, an appellate court should not conclude the trial court abused its discretion simply because a plaintiff's chosen forum has an interest in the litigation.  
Schoon
, 207 Ill. App. 3d at 609.

The 
forum
 
non
 
conveniens
 factors in this case point more toward Michigan and Arkansas than Illinois as the most convenient forum for Whirlpool's claim.

a.  Private factors:

Whirlpool could conveniently litigate its claim in Michigan.  In fact, Whirlpool brought its initial declaratory judgment action against its primary insurers in a Michigan State court.  Lloyd's, an English company, also could conveniently litigate its claim in Michigan.  Lloyd's brought its declaratory judgment claim in a Michigan Federal court.  However, as a foreign company, Lloyd's could litigate the instant case as conveniently in Illinois.  Both parties have Illinois attorneys, but the location of counsel should not affect the 
forum
 
non
 
conveniens
 weighing process.

The documentary evidence in this case is located primarily in Michigan at Whirlpool headquarters, in England with Lloyd's underwriters, and in Arkansas.  Any documents Bowes may have had in Illinois relating to Whirlpool's policy already have been discovered.  

The fact witnesses in this case come from Michigan, England, and Arkansas.  Only Travis, a Bowes representative, still lives in Illinois for at least part of the year.  Additionally, in a coverage dispute over the arguable sudden seepage of pollution in Arkansas, environmental opinion witnesses may come from other locations across the country.

The lack of compulsory process over Lloyd's would cause similar problems in any American jurisdiction, although Lloyd's seems a willing participant in coverage disputes with Whirlpool.  A jury view of the premises, if appropriate, would be possible only in Arkansas.

b.  Public factors.

The Cook County circuit court is the largest unified county court system in the country, with the congestion concomitant to that distinction.  The record shows the Arkansas courts remain less congested.  However, neither party has offered any evidence on docket congestion in Michigan's Federal district or State courts, much less England's courts.  This factor is not significant here, especially in light of this court's criticism of the trial court's overemphasis of court congestion in the first 
forum
 
non
 
conveniens
 hearing.

Jury duty would become a burden on Cook County residents.  While jurors might decide whether an Illinois broker acted as an agent for an English insurance syndicate, the primary fact questions would involve whether the English insurer's pollution policy covered seeping at an IWC facility in Arkansas owned by a Michigan resident corporation.  Illinois connection to this controversy is thin.

Finally, while Illinois has a "significant and substantial" interest in resolving cases between Illinois residents (
Kwasniewski
, 153 Ill. 2d at 556), 
this interest drastically decreases in cases involving non-resident parties.  Illinois courts have expressed a desire to encourage litigation in the forum where the injury occurred.  
See 
Brummett v. Wepfer Marine, Inc.
, 111 Ill. 2d 495, 490 N.E.2d 694 (1986); 
Wieser v. Missouri Pacific R.R. Co.
, 98 Ill. 2d 359, 456 N.E.2d 98 (1983); 
Peterson v. Monsanto Co.
, 181 Ill. App. 3d 677, 537 N.E.2d 1030 (1989).
  Whirlpool's complaint describes its injury as the monetary loss from Lloyd's "failure to fulfill its contractual obligations."   Whirlpool suffered no monetary loss in Illinois.  Logic dictates Whirlpool lost money where it maintains its headquarters--in Michigan.

Whirlpool's domicile is Michigan.  Lloyd's domicile is England.  The formal policy was issued in England by Minet and forwarded to Bowes in Chicago, but delivered to Whirlpool in Michigan.  The cover notes, summarizing Lloyd's coverage, were issued by Minet in England and Bowes in Chicago, but delivered to Whirlpool in Michigan.

The last act to give rise to the formal policy--Lloyd's underwriters' approval--occurred in England.  The last act to give rise to coverage--Lloyd's "100 percent placed" confirmation message--occurred in England.

Whirlpool notes it paid premiums to Bowes and notified Bowes of any occurrences in Chicago.  Whirlpool also notes Bowes issued endorsements, which affected the terms of the policy, with Lloyd's authorization.  Further, Whirlpool contends it negotiated its policy only with Bowes, and only Bowes negotiated with Lloyd's.  However, the record shows Bowes acted merely as a conduit for money and information between Whirlpool and Minet, Lloyd's broker.  Negotiations occurred in Michigan, Chicago, and England.  The parties discharged policy obligations in Michigan, Chicago, and England.

Illinois has the least at stake of any potential forum.  Neither party is an Illinois resident.  The insured property and the coverage-triggering event were in Arkansas.  There are some lingering issues of whether Bowes acted as an agent for Lloyd's under Illinois law, but another court could apply these agency principles.  Michigan has an interest in vindicating the contract rights of its citizens against foreign encroachment.  England has a parallel interest.  Arkansas has a substantial interest in its polluted soil.

While Whirlpool chose Illinois courts as a forum for its dispute with Lloyd's, the trial court found Illinois was a 
forum
 
non
 
conveniens
.  This was a close case.  But "[t]he role of this court is not to substitute its judgment for that of the circuit court, or even to determine whether the circuit court exercised its discretion 'wisely.'"  
Schoon
, 207 Ill. App. 3d at 609.

Illinois courts have described an abuse of discretion in various ways:  a ruling which "no reasonable person would take the view adopted by [it]" (
O'Connell v. City of Chicago
, 285 Ill. App. 3d 459, 463, 674 N.E.2d 105 (1996)); a ruling made "without the employment of conscientious judgment" or which "exceeded the bounds of reason" (
Kaden v. Pucinski
, 263 Ill. App. 3d 611, 615, 635 N.E.2d 468 (1994)); a ruling with "no reasonable basis in the evidence" (
Ford v. Baker
, 61 Ill. App. 3d 45, 46, 377 N.E.2d 853 (1978)); and a ruling whose "opposite result is clearly evident from a review of the evidence" (
In re J.P.
, 261 Ill. App. 3d 165, 174, 633 N.E.2d 27 (1994)).
  Perhaps we would have decided this case differently under a 
de
 
novo
 standard of review.  However, we cannot say the trial court's ruling fits within any of the decisional definitions of "abuse of discretion."  

CONCLUSION

The trial court followed this court's instructions on remand and did not abuse its discretion in granting Garety's 
forum
 
non conveniens
 motion.  We affirm.

AFFIRMED.

McNAMARA and SOUTH, JJ., concur.