DENNIS QUAID *et al.*, Parents and Next Friends of Zoe Grace Quaid *et al.*, Plaintiffs-Appellants, v. BAXTER HEALTHCARE CORPORATION, Defendant-Appellee.

First District (3rd Division)    No. 1—08—2727

Opinion filed June 17, 2009.

758

Harry C. Lee, Keith L. Davidson, and Laura P. Gordon, all of Law Offices of Harry C. Lee, and Susan E. Loggans, of Susan E. Loggans & Associates, P.C., both of Chicago, for appellants.

Michele Odorizzi, Sheila M. Finnegan, and Sara E. Rauh, all of Mayer Brown LLP, of Chicago, for appellee.

PRESIDING JUSTICE MURPHY delivered the opinion of the court:

Plaintiffs, Dennis and Kimberly Quaid, parents and next friends of Zoe Grace and Thomas Boone Quaid, brought an action in the circuit court of Cook County against defendant, Baxter Healthcare Corp., alleging negligence and strict liability. The trial court granted defendant's motion to dismiss pursuant to the doctrine of *forum non conveniens*, finding that California is a substantially more appropriate forum. On appeal, plaintiffs argue that the trial court abused its discretion in granting the motion.

## I. BACKGROUND

In November 2007, newborn twins Zoe and Thomas Quaid were hospitalized for treatment of a staph infection at Cedars-Sinai Hospital[1] in Los Angeles, California. On November 18, 2007, their physician prescribed 10 unit/ml of Hep-lock to keep their intravenous lines clear, but hospital personnel made a "medical error" and administered 10,000 unit/ml of Heparin instead.

On December 4, 2007, plaintiffs filed a two-count complaint against Baxter alleging strict liability and negligence. Plaintiffs alleged that the 10 unit/ml vials of Hep-lock and 10,000 unit/ml vials of Heparin manufactured by defendant were in an unreasonably dangerous condition because the labels of both vials had a blue background, which made them difficult to distinguish. They alleged that the background colors should have been different and that the vials should have been completely distinguishable in size and shape. They further alleged that defendant was negligent because it (1) failed to recall or repackage the 10,000 units/ml vial of Heparin, or issue an urgent warning to healthcare providers, when it had actual knowledge of infant deaths that occurred as a result of medication errors, (2) sold different dosages with the same blue background, (3) failed to issue an urgent warning about the fatal medication errors to all healthcare providers who purchased the product or require that such providers initiate mandatory education and implement safety measures so that a fatal medication error would not occur, and (4) failed to provide an adequate after-market solution to the existing vials and to assure that none of the existing vials were used until the after-market solution was implemented.

---

[1]Plaintiffs did not file suit against Cedars-Sinai; however, they have settled their individual claims and claims on behalf of their children against the hospital.

Defendant filed a motion to dismiss the complaint pursuant to the doctrine of *forum non conveniens*. It argued that plaintiffs reside in California, the incident occurred in California, all nonparty fact witnesses are likely to be residents of California, and California law would apply. Defendant alleged that it has a "large presence" in California, with 2,600 employees working there, and all of the witnesses who could testify as to how and why the medication error occurred live in California, beyond the subpoena power of the court. Furthermore, defendant alleged that if the case were to proceed in Illinois, it would be unable to implead Cedars-Sinai because the hospital does not do business in Illinois and has no apparent contacts with the state.

Defendant submitted statistical records showing that in 2006, the average time between the opening of a case and a jury verdict in Cook County was 38.1 months. In 2005 through 2006 in Los Angeles County, 65% of general unlimited civil cases were disposed of in less than 12 months, 86% in less than 18 months, and 94% in less than 24 months.

Defendant also relied on the California Department of Health Services' investigation of the error and conclusion that there were "multiple failures by the facility to adhere to established policies & procedures for safe medication use": pharmacy technicians mistakenly sent the pediatric unit 100 vials of 10,000 unit/ml of Heparin instead of the 10 ml/unit vials of Hep-Lock used for flushing intravenous lines, and the nurses who administered the vials then violated hospital procedures by failing to read the labels. The Department of Health Services ordered the hospital to take immediate corrective action to remedy the deficiencies in its procedures and training, which the Department concluded placed patients in "immediate jeopardy" of serious injury or death.

In February 2007, after a similar medication error at Methodist Hospital in Indianapolis, Indiana, involving 10 unit/ml vials of Hep-lock and 10,000 unit/ml vials of Heparin, defendant distributed a Food-and-Drug-Administration (FDA)-approved "Important Medication Safety Alert" warning that a medication error had occurred when two Heparin products were confused and advising healthcare providers to take certain steps to guard against further errors.

The parties were permitted to take discovery limited to the *forum non conveniens* issue. In their response to the motion, plaintiffs alleged that defendant is incorporated in Delaware, with its corporate headquarters in Deerfield, Illinois, and its registered agent in Chicago. Defendant operates in three business segments, with the subject Heparin products falling under the Medication Delivery Segment, which has offices in Deerfield and Round Lake, Illinois. The plant where the vials were processed and labeled is in Cherry Hills, New Jersey, and

some of the employees with responsibility over these products work at a Baxter facility in New Providence, New Jersey. Baxter's distribution center for the vials is in Memphis, Tennessee.

Baxter had 42 employees involved in consideration of labeling and packaging changes for the Heparin and Hep-Lock products: 33 current employees, who work in the Illinois and New Jersey facilities, and 9 former employees whose last known addresses are in New Jersey, Pennsylvania, Illinois, and South Carolina. It also identified 37 members of its safe packaging committee, including 31 current employees, who work at Baxter's Illinois and New Jersey facilities, and 6 former employees, who live in Illinois, New Jersey, and Pennsylvania. In addition, the Baxter employees involved in completing its new drug applications and adverse events reports for the Heparin and Hep-Lock products work at facilities in New Jersey and Illinois.

The last known addresses of the people significantly involved in pharmacovigilance and adverse events related to the subject Heparin products before March 2006 are in Pennsylvania and Park Ridge, Illinois. The Baxter employees involved in pharmacovigilance who investigated the September 2006 incident at Methodist Hospital and the November 2007 incident regarding plaintiffs' children currently work at Baxter's Deerfield facility, and the last known addresses of the two former employees who may have sought information about the incident at Methodist Hospital are in Pennsylvania and Texas. The Baxter employees who had interaction with the FDA concerning the incidents at Methodist Hospital and Cedars-Sinai currently work at Baxter's Illinois and New Jersey facilities. Current Baxter employees involved in the drafting, distribution, or review of the medication safety alert work at Baxter's Illinois and New Jersey facilities, and various former employees involved in that work live in New Jersey (three), Illinois (one), and Pennsylvania (one).

According to a Baxter news release, defendant introduced a "New Drug Safety Initiative" in 2007 for the purpose of reducing "medication errors by creating enhanced packaging that provides additional safeguards to assist clinicians in the correct identification of critical medications." In October 2007, Heparin was the first medication offered with new enhanced labeling. Defendant did not issue a recall of the Heparin lacking the new labeling. Defendant's current employees involved in its "New Drug Safety Initiative" work at its facilities in Illinois and New Jersey, and its former employees involved in that work have last known addresses in Pennsylvania and Minnesota.

As part of the "New Drug Safety Initiative," Baxter conducted interviews with more than 100 pharmacists, physicians, and nurses to identify areas for improvement. The companies that Baxter retained

to interview clinicians conducted those interviews in Pennsylvania, Florida, New Jersey, Florida, Texas, and Ohio. The Baxter employee who authorized the research works at the New Providence, New Jersey, facility.

Records relating to the Heparin and Hep-Lock products are located in Illinois and New Jersey. Furthermore, defendant has sold its Heparin products to various hospitals in Illinois and has marketed Heparin products in clinical journals that are delivered to residents and clinicians in Illinois.

The trial court noted that California would not be inconvenient to either party, as plaintiffs live there and defendant has 2,600 employees there. Furthermore, citing *Berbig v. Sears Roebuck & Co.*, 378 Ill. App. 3d 185 (2007), *Skidmore v. Gateway Western Ry. Co.*, 366 Ill. App. 3d 238 (2006), and *Vinson v. Allstate*, 144 Ill. 2d 306 (1991), the court found that it had "no power to use compulsory process to secure the attendance" of California witnesses, including Cedars-Sinai employees and employees of the California Department of Health Services. More important "from a 'fundamental fairness' standpoint, defendant will be unable to file a third-party complaint for contribution against Cedars-Sinai and other medical personnel." The court rejected plaintiffs' contention that defendant's failure to bring a third-party complaint renders the issue premature and speculative. The court distinguished this case and other product liability cases because here, "the decision to use a product that is mislabeled or contains inadequate warnings was made by a highly trained third party not subject to the court's jurisdiction."

In addition, the trial court noted that although there were many witnesses located in different states, "the majority of them are employees of defendant that can be compelled to testify in any forum." Court congestion is greater in Cook County than Los Angeles County, and California residents have a greater interest in this case than Cook County residents: "only California residents are concerned with the quality of medical care rendered in California hospitals." Finally, "defendant makes a convincing argument that the substantive law of California will apply to this case." Accordingly, the court granted defendant's motion to dismiss.

Plaintiffs filed a petition for leave to appeal with this court pursuant to Supreme Court Rule 306(a)(2) (210 Ill. 2d R. 306(a)(2)). On October 30, 2008, we granted the petition.

## II. ANALYSIS

### A. Jurisdiction

■ First, defendant argues that we lack jurisdiction because plaintiffs filed a petition for leave to appeal pursuant to Rule 306(a)(2)

instead of a notice of appeal pursuant to Rule 301 (155 Ill. 2d R. 301) ("Every final judgment of a circuit court in a civil case is appealable as of right. The appeal is initiated by filing a notice of appeal. No other step is jurisdictional"). According to defendant, a dismissal under the doctrine of *forum non conveniens* is a final judgment that can only be appealed under Rule 301. Thus, defendant argues, plaintiffs' failure to file a notice of appeal from the dismissal order deprives this court of jurisdiction.

In interpreting a supreme court rule, this court must follow the same guidelines as for statutory interpretation. *Giannini v. Kumho Tire U.S.A., Inc.*, 385 Ill. App. 3d 1013, 1016 (2008). The goal of the court is to interpret the rule by ascertaining and giving effect to the drafter's intentions. *Giannini*, 385 Ill. App. 3d at 1016. Therefore, the words used by the supreme court should be given their plain, ordinary, and popularly understood meanings. *Giannini*, 385 Ill. App. 3d at 1016.

We reject defendant's argument. First, the plain language of Rule 306(a)(2) permits a party to file a petition for leave to appeal from an order granting a motion to dismiss on the grounds of *forum non conveniens*:

"(a) Orders Appealable by Petition. A party may petition for leave to appeal to the Appellate Court from the following orders of the trial court:
    ***
    (2) from an order of the circuit court allowing or denying a motion to dismiss on the grounds of *forum non conveniens*, or from an order of the circuit court allowing or denying a motion to transfer the case to another county within this State on such grounds." 210 Ill. 2d R. 306(a)(2).

Since Rule 306 specifically permits a party to "petition for leave to appeal to the Appellate Court *** from an order of the circuit court allowing or denying a motion to dismiss on the grounds of *forum non conveniens*" (210 Ill. 2d R. 306(a)(2)), we find that plaintiffs' compliance with that rule did not deprive this court of jurisdiction.

Second, Supreme Court Rule 187 (134 Ill. 2d R. 187), under which defendant brought its motion to dismiss pursuant to the doctrine of *forum non conveniens*, belies defendant's assertion that the order was final. Rule 187(c)(2) provides as follows:

"Dismissal of an action under the doctrine of *forum non conveniens* shall be upon the following conditions:
    (i) if the plaintiff elects to file the action in another forum within six months of the dismissal order, the defendant shall accept service of process from that court; and

(ii) if the statute of limitations has run in the other forum, the defendant shall waive that defense.

If the defendant refuses to abide by these conditions, the cause shall be reinstated for further proceedings in the court in which the dismissal was granted. If the court in the other forum refuses to accept jurisdiction, the plaintiff may, within 30 days of the final order refusing jurisdiction, reinstate the action in the court in which the dismissal was granted. The costs attending a dismissal may be awarded in the discretion of the court." 134 Ill. 2d R. 187(c)(2).

Where dismissal is subject to "conditions" and the case will be reinstated if a defendant fails to comply with those conditions, the dismissal order was not final.

Defendant also argues that a dismissal on *forum non conveniens* grounds "has always been considered" the entry of a final judgment, which is appealable as of right. However, Rule 306 was amended December 17, 1993, effective February 1, 1994, from "denying a motion to dismiss on the grounds of *forum non conveniens*" (134 Ill. 2d R. 306) to "allowing *or* denying a motion to dismiss on the grounds of *forum non conveniens*" (emphasis added) (210 Ill. 2d R. 306). Furthermore, the three Illinois cases that defendant cites were decided before the 1994 amendment to Rule 306. See *Certain Underwriters at Lloyds, London v. Bertrand Goldberg Associates, Inc.*, 238 Ill. App. 3d 692 (1992); *In re Marriage of Clark*, 232 Ill. App. 3d 342 (1992); *Professional Group Travel, Ltd. v. Professional Seminar Consultants, Inc.*, 136 Ill. App. 3d 1084 (1985).

Defendant further claims that Rule 306 applies only to nonfinal orders that grant or deny a motion to dismiss on *forum non conveniens* grounds—for example, a defendant can seek leave to appeal if its motion is denied, and a plaintiff can seek leave to appeal if some, but not all, defendants are dismissed on *forum non conveniens* grounds. To interpret the rule otherwise, defendant argues, would be contrary to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, §6). According to defendant, the supreme court has the power under the constitution to provide for discretionary interlocutory appeals, but "it has no power to adopt rules that would convert a litigant's absolute right to appeal a final judgment into a discretionary appeal." Rule 306, however, does not contain the limits as to the number of parties or claims that defendant seeks to impose. Furthermore, with the plain language of Rule 306, our supreme court has determined that filing a petition for leave to appeal is the proper procedure for seeking review of a *forum non conveniens* dismissal.

Our research did not reveal any cases specifically addressing this issue. In *Whirlpool Corp. v. Certain Underwriters at Lloyd's London*, 295 Ill. App. 3d 828 (1998), the plaintiff filed a petition for leave to appeal the *forum non conveniens* dismissal under Rule 306(a)(2), which this court granted. The plaintiff also appealed the trial court's denial of its motion for reconsideration under Rule 301. This court consolidated the cases and affirmed the decision granting the defendant's *forum non conveniens* motion. *Whirlpool Corp.*, 295 Ill. App. 3d at 839. While the court did not address its jurisdiction under Rule 306(a)(2), it had an independent obligation to consider its jurisdiction and dismiss the appeal if jurisdiction was lacking. *Fligelman v. City of Chicago*, 264 Ill. App. 3d 1035, 1037 (1994). The fact that this court did not dismiss for lack of jurisdiction suggests that jurisdiction did exist.

The plain language of Rule 306(a)(2) provides that a party may petition for leave to appeal to the appellate court from an order of the trial court allowing or denying a motion to dismiss on the grounds of *forum non conveniens*. Therefore, we conclude that plaintiffs' failure to file a notice of appeal did not deprive this court of jurisdiction.

## B. *Forum Non Conveniens*

Under section 2—101 of the Code of Civil Procedure, an action must generally be commenced in the county of residence of any defendant who is joined in good faith or in the county where the cause of action arose. 735 ILCS 5/2—101 (West 2004). If more than one potential forum exists, the equitable doctrine of *forum non conveniens* may be invoked to determine the most appropriate forum based on fairness and convenience. *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 105 (1990). The doctrine "allows a trial court to decline jurisdiction in the exceptional case where trial in another forum with proper jurisdiction and venue 'would better serve the ends of justice.' " *First American Bank v. Guerine*, 198 Ill. 2d 511, 515 (2002), quoting *Vinson*, 144 Ill. 2d at 310. See also *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 176 (2003) (the test is whether the relevant factors, viewed in their totality, "strongly favor transfer to the forum suggested by defendant"). A trial court has considerable discretion in ruling on a *forum non conveniens* motion, and its decision to grant or deny that motion will not be reversed absent an abuse of discretion. *Berbig*, 378 Ill. App. 3d at 188. A trial court abuses its discretion when no reasonable person would take the view adopted by the trial court. *Berbig*, 378 Ill. App. 3d at 188.

In resolving *forum non conveniens* questions, the trial court must balance private interest factors, which affect the convenience of the

parties, and public interest factors, which affect the administration of the court. *Woodward v. Bridgestone/Firestone, Inc.*, 368 Ill. App. 3d 827, 832 (2006). Each *forum non conveniens* case must be considered as unique on its facts. *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 443 (2006).

■ Private interest factors include (1) the convenience of the parties; (2) the relative ease of access to sources of testimonial, documentary, and real evidence; and (3) all other practical problems that make trial of a case easy, expeditious, and inexpensive, for example, the availability of compulsory process to secure attendance of unwilling witnesses, the cost to obtain attendance of unwilling witnesses, and the ability to view the premises, if appropriate. *Guerine*, 198 Ill. 2d at 516.

The public interest factors include (1) the interest in deciding localized controversies locally; (2) the unfairness of imposing the expense of a trial and the burden of jury duty on residents of a county with little connection to the litigation; and (3) the administrative difficulties presented by adding further litigation to court dockets in already-congested fora. *Guerine*, 198 Ill. 2d at 517. Court congestion is a relatively insignificant factor, especially where the record does not show the other forum would resolve the case more quickly. *Guerine*, 198 Ill. 2d at 517.

A trial court does not weigh the private factors against the public factors; rather, it must evaluate the total circumstances of the case in deciding whether the defendant has proven that the balance of factors strongly favors transfer. *Guerine*, 198 Ill. 2d at 518. The defendant must show that the plaintiff's chosen forum is inconvenient to the defendant and another forum is more convenient to all parties. *Guerine*, 198 Ill. 2d at 518. A defendant cannot assert that the plaintiff's chosen forum is inconvenient to the plaintiff. *Guerine*, 198 Ill. 2d at 518. Unless the balance of factors strongly favors a defendant's choice of forum, the plaintiff's choice of forum should rarely be disturbed. *Langenhorst*, 219 Ill. 2d at 444.

As a preliminary matter, although a plaintiff has a substantial interest in choosing the forum where his rights will be vindicated, "the plaintiff's interest in choosing the forum receives somewhat less deference when neither the plaintiff's residence nor the site of the accident or injury is located in the chosen forum." *Guerine*, 198 Ill. 2d at 517. When the home forum is chosen, it is reasonable to assume that the choice is convenient. *Guerine*, 198 Ill. 2d at 517. When the plaintiff is foreign to the forum chosen, however, this assumption is much less reasonable and the plaintiff's choice deserves less deference. *Guerine*, 198 Ill. 2d at 517.

Defendant argues that where nonresident plaintiffs bring a tort action in a state far from the site of the incident in question, it is logical to assume that they have chosen the forum not because it is convenient, but because they are seeking to obtain some advantage from the selection of the forum. " '[W]hen the plaintiff is foreign to the forum chosen and the action that gives rise to the litigation did not occur in the chosen forum ***' " " 'it is reasonable to conclude that the plaintiff engaged in forum shopping to suit his individual interests, a strategy contrary to the purposes behind the venue rules.' " *Dawdy*, 207 Ill. 2d at 174, quoting *Certain Underwriters at Lloyds, London v. Illinois Central R.R. Co.*, 329 Ill. App. 3d 189, 196 (2002). As the supreme court further noted in *Guerine*, "A concern animating our *forum non conveniens* jurisprudence is curtailing forum shopping by plaintiffs." *Guerine*, 198 Ill. 2d at 521. Therefore, since plaintiffs are residents of California and the medication error occurred there, their choice is entitled to "somewhat less deference." *Guerine*, 198 Ill. 2d at 517.

■ The first private interest factor is the convenience of the parties. Because "[w]e live in a smaller world" and "are connected by interstate highways, bustling airways, telecommunications, and the world wide web," "[t]oday, convenience—the touchstone of the *forum non conveniens* doctrine—has a different meaning." *Guerine*, 198 Ill. 2d at 525. It is clear that California is a convenient forum for both parties. Plaintiffs live there, and defendant has facilities and 2,600 employees there.

Plaintiffs argue that Illinois would be more convenient for the numerous former and current Baxter employees that defendant identified in its responses to plaintiffs' interrogatories, many of whom live in Illinois. The following current employees work at defendant's Illinois and New Jersey facilities: those who interacted with the FDA concerning the incidents at Methodist Hospital and Cedars-Sinai; those involved in the drafting, distribution, or review of the medication safety alert; 37 members of the safe packaging committee; 33 employees involved in consideration of labeling and packaging changes for the Heparin and Hep-Lock products; employees involved in completing its new drug applications and adverse events reports for the Heparin and Hep-Lock products; and employees involved in defendant's "New Drug Safety Initiative." The people significantly involved in pharmacovigilance and adverse events related to the subject Heparin products before March 2006 live in Pennsylvania and Park Ridge, Illinois, and the Baxter employees involved in pharmacovigilance who investigated the incident at Methodist Hospital and the incident regarding plaintiffs' children currently work at Baxter's Deer-

field facility. Former employees whose testimony plaintiffs claim would be relevant live in New Jersey, Illinois, Pennsylvania, South Carolina, Minnesota, and Texas. Furthermore, the companies that Baxter retained to interview clinicians as part of the "New Drug Safety Initiative" conducted those interviews in Pennsylvania, Florida, New Jersey, Florida, Texas, and Ohio. The Baxter employee who authorized the research works at Baxter's New Providence, New Jersey, facility.

Therefore, the majority of defendant's relevant current employees seem to live in Illinois and New Jersey, and the remaining witnesses are scattered among several states. It is well settled that when potential witnesses are scattered among different forums, none enjoys a predominant connection to the litigation. *Dawdy*, 207 Ill. 2d at 176; *Guerine*, 198 Ill. 2d at 526.

Defendant responds that it will be necessary for Cedars-Sinai employees to testify regarding the medication error and for the California Department of Health Service employees to testify about its investigation. Furthermore, all postoccurrence medical treatment occurred in California. If the case were tried in Illinois, defendant argues, plaintiffs would be able to compel the appearance of defendant's employees, but defendant would not be able to compel the appearance of the Cedars-Sinai and California Department of Health Service employees.

In *Gridley v. State Farm Mutual Automobile Insurance Co.*, 217 Ill. 2d 158 (2005), the plaintiff brought a class action in Illinois for conduct that occurred in Louisiana, where all documents and witnesses were also located. Our supreme court noted that Illinois courts do not have subpoena power in Louisiana, thus affecting the ability to secure the attendance of unwilling witnesses by compulsory process. *Gridley*, 217 Ill. 2d at 174. "In contrast, the named witnesses residing in Illinois appear to be employees of [the defendant], so it is unlikely that [the plaintiff] would have the same difficulty securing the attendance of those witnesses in Louisiana." *Gridley*, 217 Ill. 2d at 174.

Similarly, in *Woodward*, 29 potential witnesses, including occurrence witnesses and medical personnel, were located in Australia. The court noted that if the case remained in Illinois, witnesses in Australia were not compelled to come to the United States, and if the forum was changed to Australia, American witnesses would not be compelled to appear in Australia. *Woodward*, 368 Ill. App. 3d at 835. It noted, however, that the defendants, "both United States corporations, may produce their own employees for a deposition or a trial without the benefit of subpoenas." *Woodward*, 368 Ill. App. 3d at 835.

Finally, in *Jones v. Searle Laboratories*, 93 Ill. 2d 366 (1982), the plaintiffs, residents of the United Kingdom, filed suit against the

defendant, a developer of oral contraceptives, alleging that it failed to provide adequate warnings as to their side effects. The court noted that the contraceptives were manufactured, marketed, sold, prescribed, and used in the United Kingdom, so most of the evidence concerning the issues of causation and damages was located there. *Jones*, 93 Ill. 2d at 374. Furthermore, to adequately defend the action, the defendant needed information about individual plaintiffs' medical conditions, knowledge of each prescribing physician regarding the drug and the particular plaintiff, and the nature of the injury, the medical treatment given, and the damages sustained. *Jones*, 93 Ill. 2d at 374. The sources of proof concerning these issues were exclusively within the United Kingdom. *Jones*, 93 Ill. 2d at 374.

The court found that there was no compulsory process to secure the attendance of unwilling witnesses from the United Kingdom, and the cost of transporting willing witnesses to Illinois was substantial. *Jones*, 93 Ill. 2d at 374. The court noted that it was "doubtful that plaintiffs, residents of the United Kingdom, will have the same difficulty in securing the attendance of witnesses. The individuals in Illinois who would be called upon to testify are employees of the defendant." *Jones*, 93 Ill. 2d at 374. See also *Skidmore*, 366 Ill. App. 3d at 242 (the private-interest factors favored Missouri because all of the witnesses were located there: "Illinois has no subpoena power over Missouri residents and, thus, has no ability to secure the attendance of unwilling residents who reside in Missouri"); *Vinson*, 144 Ill. 2d at 312.

Similarly, Illinois lacks subpoena power over Cedars-Sinai and California Department of Health Service employees, witnesses that reside in California. If the litigation occurred in California, defendant would have access to those witnesses, and "it is unlikely that [plaintiffs] would have the same difficulty securing the attendance" of defendant's employees, most of whom reside in Illinois. *Gridley*, 217 Ill. 2d at 174.

Plaintiffs argue that if the case were tried in California, they would be unable to subpoena former Baxter employees or contractors. Defendant responds that the testimony of the former employees is largely irrelevant and cumulative of that of Baxter's current employees. Furthermore, one of the former employees, an attorney involved in the drafting, distribution, or review of the February 2007 safety alert, stated in an affidavit that she was willing to appear voluntarily at trial in California. In *Ellis v. AAR Parts Trading, Inc.*, 357 Ill. App. 3d 723 (2005), this court noted that "[i]f the case remains in Illinois, witnesses in the Philippines are not compelled to come to the United States; and, if the forum is changed to the Philippines, Il-

linois witnesses, including the plaintiff, could not be compelled to appear in the Philippines." *Ellis*, 357 Ill. App. 3d at 743-44. Nonetheless, the court affirmed the trial court's denial of the defendants' *forum non conveniens* motion, noting that although the trial court's determination of an appropriate forum could have been decided in favor of either Cook County or the Philippines, no abuse of discretion occurred. *Ellis*, 357 Ill. App. 3d at 747-48.

Plaintiffs emphasize that this is a products liability case against Baxter, not a negligence action against Cedars-Sinai. They contend that the testimony of the California-based witnesses could have no bearing on their products liability case, and there is no dispute over what happened at Cedars-Sinai. Defendant responds that the hospital's knowledge of the warnings issued in the wake of the medication error in Indianapolis and the actions it took in response to those warnings are relevant to the issue of proximate cause, as well as the application of the "learned intermediary" doctrine. We note that, as the manufacturer of a prescription drug, defendant's warnings ran to the health professionals who prescribed the medication, not to the patients who received them. See *Kennedy v. Medtronic, Inc.*, 366 Ill. App. 3d 298, 305 (2006) (manufacturers of prescription drugs have a duty to warn prescribing physicians of the drugs' known dangerous propensities, and the physicians, in turn, using their medical judgment, have a duty to convey those warnings to their patients); *Hansen v. Baxter Healthcare Corp.*, 198 Ill. 2d 420, 430 (2002) (the court, in evaluating the application of the "learned intermediary" doctrine, recounted the testimony of a number of health care professionals who prescribed and used the medical device at issue).

Plaintiffs further argue that, to the extent that it would be necessary for California-based witnesses to testify regarding the "admitted and already documented events in California," such testimony could be taken via deposition and presented as testimony at trial. See 188 Ill. 2d R. 206; 210 Ill. 2d R. 212. As the supreme court noted in *Jones*, however, "[a]lthough defendant could depose these witnesses, depositions have been deemed an inadequate substitute for live testimony." *Jones*, 93 Ill. 2d 366, 374 (1982). See also *Satkowiak v. Chesapeake & Ohio Ry. Co.*, 106 Ill. 2d 224, 229 (1985) ("this court has held that evidentiary depositions are not an acceptable substitute for live testimony").

In a similar vein, if the case remains in Illinois, defendant would not be able to file a third-party complaint against Cedars-Sinai, since there is no basis for Illinois to assert long-arm jurisdiction over the hospital. Therefore, if the case proceeded in Illinois, defendant would have to litigate against plaintiffs here and against the hospital in

California. In *Cook v. General Electric Co.*, 146 Ill. 2d 548 (1992), the plaintiff was injured when the train he was operating collided with a combine in Montgomery County. He filed suit in St. Clair County against his employer, the railroad, and General Electric (GE), the manufacturer of the locomotive. GE filed a third-party complaint for contribution against Montgomery County and Walshville Township and moved to transfer the case to Montgomery County. The trial court denied the motion and severed the contribution action. On appeal, the court concluded that the contribution action had to be tried in Montgomery County, since the venue provisions of the Code of Civil Procedure required that actions against governmental defendants must be brought in the county where they have their principal offices or where the cause of action arose. *Cook*, 146 Ill. 2d at 553. After considering all of the relevant *forum non conveniens* factors, including that "trying these actions together in Montgomery County would conserve judicial resources and resolve the dispute more quickly and economically," the court ruled that GE's motion should have been granted. *Cook*, 146 Ill. 2d at 559-60.

Unlike GE, defendant has not yet filed a third-party complaint against Cedars-Sinai. Plaintiffs cite *Woodward*, which involved a car accident in Australia that was allegedly caused by a defective roof in the Ford Explorer and a defective Firestone tire. The court held that it would have been premature for the trial court to remove the case on the basis that a third-party cause of action may be filed where the defendants had not filed such an action and the record contained no indication that they plan to do so. *Woodward*, 368 Ill. App. 3d at 835. Similarly, *Ellis* held that it would have been premature for the trial court to remove the case on this basis since no third-party action had been filed, nor did the record indicate that it had been contemplated. *Ellis*, 357 Ill. App. 3d at 746-47. "As such, this is not a factor that would encourage us to overturn the trial court's denial of the defendants' motion to dismiss the cause of action." *Ellis*, 357 Ill. App. 3d at 747.

While defendant has not yet filed a third-party complaint against Cedars-Sinai, it apparently contemplates such a filing, since it raised this issue in its motion to dismiss pursuant to the doctrine of *forum non conveniens*. In addition, in *Woodward*, the potential third-party defendants' liability was far from clear: they were simply witnesses who arrived on the scene shortly after the accident, and one of them struck the plaintiff's vehicle, which was still in the roadway. Here, it could be argued that plaintiffs' complaint establishes at least some liability on the part of Cedars-Sinai, as it alleges that the 10 unit/ml Hep-Lock was prescribed for the infants but "a medical error was

made by personnel of Cedars-Sinai Hospital and 10,000 unit/ml of Heparin was administered instead."

We find *Woodward* to be further distinguishable because the decision to use the product in that case was made by the plaintiff instead of a third party. We agree with the trial court that there is an "important distinction" between this case and other product liability cases because here, "the decision to use a product that is mislabeled or contains inadequate warnings was made by a highly trained third party not subject to the court's jurisdiction."

Plaintiffs next maintain that records pertaining to the Heparin and Hep-Lock products are located in Illinois and New Jersey, not California. However, "the location of documentary evidence has become less significant because today's technology allows documents to be copied and transported easily and inexpensively." *Ammerman v. Raymond Corp.*, 379 Ill. App. 3d 878, 890 (2008).

It seems unlikely that the jury would need to view the premises. Although it is the possibility, rather than the necessity, of a jury view that is important, "the importance of this factor diminishes due to the fact that this case primarily concerns a products liability claim." *Dawdy*, 207 Ill. 2d at 178; *Ammerman*, 379 Ill. App. 3d at 891; *Guerine*, 198 Ill. 2d at 525.

Finally, plaintiffs argue that the location of the parties' attorneys—in Chicago—favors retention of the case in Illinois. While a court may consider this factor, "little weight should be accorded it." *Boner v. Peabody Coal Co.*, 142 Ill. 2d 523, 534 (1991).

With respect to the first public interest factor, which concerns having local interests resolved locally, plaintiffs argue that the trial court erred in concluding that California residents have a far greater interest in this case than do Illinois residents. Where a case involves questions of product liability, the concern of having local interests resolved locally "is of less significance because products liability cases have broader implications." *Ammerman*, 379 Ill. App. 3d at 892. "[W]hile the forum where the injury occurred 'generally has a strong interest in the outcome of litigation, this general rule does not necessarily apply to cases involving complex products liability issues.' " *Woodward*, 368 Ill. App. 3d at 836, citing *Hefner v. Owens-Corning Fiberglas Corp.*, 276 Ill. App. 3d 1099, 1106 (1995). See also *Guerine*, 198 Ill. 2d at 525 (products liability claim less localized); *Brown v. Cottrell, Inc.*, 374 Ill. App. 3d 525, 534 (2007) (a product liability claim is not "inherently local in flavor"); *Hinshaw v. Coachmen Industries, Inc.*, 319 Ill. App. 3d 269, 278 (2001) (local interest is "largely supplanted by a more general interest in the safety of Dodge vans"). This court continued in *Ammerman*:

"Indeed, Cook County certainly has an interest in resolving a controversy concerning the sale of an allegedly defective product by companies conducting business in its forum. Moreover, we note that Caterpillar, the other corporate defendant, has a registered agent in Cook County, and thus, Cook County has an interest in deciding a controversy involving one of its residents." *Ammerman*, 379 Ill. App. 3d at 892, citing *Langenhorst*, 219 Ill. 2d at 451.

It also follows that jurors residing in Illinois have an interest in hearing and resolving such a claim. *Ammerman*, 379 Ill. App. 3d at 892.

Nevertheless, defendant correctly observes that California's "paramount interest" in this matter is demonstrated by the swift action it took after the incident to investigate and discipline the hospital. By contrast, there is no evidence that the State of Illinois took any action against defendant. As the trial court noted, while "all residents are interested in the safe labeling of drugs dispensed in their counties, only California residents are concerned about the quality of medical care rendered in California hospitals."

Furthermore, while Illinois residents have a strong interest in the operations of businesses located there, merely conducting business within a county in Illinois does not affect the *forum non conveniens* analysis. *Gridley*, 217 Ill. 2d at 172. A *forum non conveniens* motion causes the court to look beyond the criteria of venue when it considers the relative convenience of a forum. *Vinson*, 144 Ill. 2d at 311.

"If the fact that the defendant conducts business *** in the plaintiff's chosen forum were dispositive, the *forum non conveniens* 'doctrine itself would be entirely vitiated, and no transfer would ever be obtained. Rather, plaintiff's choice would be elevated to the stature of a dispositive consideration, which is patently not to be allowed.' " *Dawdy*, 207 Ill. 2d at 182, quoting *Franklin v. FMC Corp.*, 150 Ill. App. 3d 343, 347 (1986).

The trial court also noted that defendant "makes a convincing argument that the substantive law of California will apply to this case." Plaintiffs argue that "it is not clear" whether Illinois or California law applies where the corporate decisions were likely made in Illinois and there is no real dispute as to the medication error.

A choice-of-law determination is required only when a difference in the law will make a difference in the outcome. *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 155 (2007). Plaintiffs contend that neither the trial court nor defendant identified any significant difference between California and Illinois products liability law. Plaintiffs do not attempt such an analysis of their own, even to establish the *lack* of differences in the law. Nevertheless, defendant does identify "at least one critical difference between California and Illinois law":

under California law, it could argue for proportionate fault regardless of whether the hospital is added as a defendant (*DaFonte v. Up-Right, Inc.*, 2 Cal. 4th 593, 603-04, 828 P.2d 140, 146, 7 Cal. Rptr. 2d 238, 244 (1992)), but under Illinois law, defendant could not "limit its liability to its proportionate fault by comparing its conduct to that of nonparties to the action." See 735 ILCS 5/2—1117 (West 2004); *Yoder v. Ferguson*, 381 Ill. App. 3d 353 (2008). We also note that cases analyzing this *forum non conveniens* factor do not perform a full-scale choice-of-law analysis. See *Gridley*, 217 Ill. 2d at 175; *McClain v. Illinois Central Gulf R.R. Co.*, 121 Ill. 2d 278, 291 (1988); *Moore v. Chicago & North Western Transportation Co.*, 99 Ill. 2d 73, 80 (1983); *Eads v. Consolidated R. Corp.*, 365 Ill. App. 3d 19, 30 (2006).

*Townsend* held that "a *strong* presumption exists that the law of the place of injury *** governs the substantive issues herein," unless plaintiffs can demonstrate that "Illinois has a more significant relationship to the occurrence and the parties with respect to a particular issue." (Emphasis in original.) *Townsend*, 227 Ill. 2d at 166. This presumption must be tested against the factors established by section 145(2) of the Second Restatement of Conflict of Laws (Restatement (Second) of Conflict of Laws §145(2), at 414 (1971)): (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile of the parties; and (4) the place where the relationship between the parties is centered. *Townsend*, 227 Ill. 2d at 160.

First, the injury occurred in California. *Townsend* cautioned that "situations exist where the place of the injury will not be an important contact, for example, where the place of the injury was fortuitous." *Townsend*, 227 Ill. 2d at 168. However, in *Townsend*, Michigan had a strong relationship to the occurrence and the parties, since it was the place where the plaintiffs bought the lawn tractor in question, the place where it was used, and the place where the plaintiffs resided. *Townsend*, 227 Ill. 2d at 168. The fact that the injury occurred in California is not fortuitous, since that is where plaintiffs live and where the twins were born.

The second and third factors appear to be a "wash." *Townsend*, 227 Ill. 2d at 168-69. While plaintiffs' theory of the case is that the allegedly culpable acts occurred in Illinois, the hospital staff's medication error occurred in California. Furthermore, plaintiffs are domiciled in California, and defendant's principal place of business is in Illinois. As for the fourth factor, the relationship between the parties was centered in California, where the Heparin was administered. *Townsend*, 227 Ill. 2d at 166.

After applying the *Townsend* factors, we find that California law will probably apply in this case. While plaintiffs argue that the need to apply another state's law is not dispositive to the *forum non conveniens* analysis, *Gridley* held that the need to apply another state's law is a "significant factor favoring dismissal of a suit on grounds of *forum non conveniens*." *Gridley*, 217 Ill. 2d at 175; *Moore*, 99 Ill. 2d at 80; *Eads*, 365 Ill. App. 3d at 30.

Finally, the "court congestion factor, by itself, is relatively insignificant." *Dawdy*, 207 Ill. 2d at 181. Nonetheless, the supreme court has "repeatedly recognized that it is appropriate to consider the congested conditions of the docket in the plaintiff's chosen forum." *Dawdy*, 207 Ill. 2d at 181. Here, the trial court noted that defendant established that court congestion is worse in Cook County than Los Angeles County.

We find that plaintiffs' choice of forum is entitled to less deference because Illinois is neither their residence nor the site of the accident or injury. Furthermore, the lack of compulsory process to secure unwilling witnesses, defendant's inability to file a third-party complaint for contribution against Cedars-Sinai in Illinois, California's strong interest in regulating medication errors in its own hospitals, and the possible application of California law support the trial court's determination.

## III. CONCLUSION

This court has jurisdiction under Rule 306(a)(2) to decide this appeal. We further find that the trial court did not abuse its discretion in granting the motion to dismiss pursuant to the doctrine of *forum non conveniens*.

Affirmed.

THEIS and QUINN, JJ., concur.